A. M. LEE, Ex'r of T. M. LEE v. A. A. MOSELEY.

*Domicile— Constitution—Homestead—Residence—Intent.*

1. The words " a resident of this State," employed in the Constitution —Art. 10, § 2—in respect to homesteads, have a more restricted meaning than that usually given to *domicile;* to entitle a person to the constitutional exemption he must be an actual and not a constructive resident.

2. Where the facts show an actual removal from the State, even for a definite period, the person so removing ceases, so long as he remains absent, to be " a resident of the State," in respect of his right to a homestead, although he may have had the intent to return and resume his residence therein.

MERRIMON, J., Dissenting.

This was an application to have a homestead allotted, tried upon issue of fact joined, before *Shepherd, J.,* at Spring Term, 1888, of SAMPSON Superiour Court.

The plaintiff having recovered judgment against the defendant in the court of a justice of the peace, in the county of Sampson, and caused it to be docketed in the Supe-

rior Court, sued out an execution thereon, under which the tract or lot of the defendant was, in July, 1887, sold and conveyed to the plaintiff without assigning him a homestead. At the time of sale no claim was made thereto, but the defendant, according to the Sheriff's return, then residing at Little River, in South Carolina, was notified by mail of the sale. In February, 1888, the defendant applied by petition to the Superior Court upon the allegations of fact therein contained, for an order setting aside the sale and vacating the deed of the Sheriff, and for the appointment of commissioners to lay off and assign to him a homestead in the lot. Accompanying the petition is his affidavit, in which he says that he is a citizen and resident of this State, and that his removal to South Carolina was for a definite period of time, with no intent to make that his permanent home, but to return, and that such is his present purpose, after a short sojourn. Notice was given to the plaintiff of an intended motion to this effect, to be made before the Judge on March 2, 1888.

At April Term, 1888, the application was heard, and a single issue submitted to the jury, to-wit: Was the petitioner, A. A. Moseley, a resident of the State of North Carolina on July 4, 1887 ?

The testimony of the defendant was to this effect :

" I was born and raised in Sampson County ; resided in New Hanover on July 4, 1887, and reside there now. I own no real estate except this described in the petttion. I owned this in July, 1887." Upon cross-examination he stated : " I am fifty-three years old ; have a wife and one child ; left them in Horry County, S. C., last Sunday. She went there on the 17th of February, 1887. My child is seventeen years old. My wife has two other children who are of age ; one of them is in New Berne, and the other is with her ; she owns about three thousand acres of land in South Carolina, and is living on other land in which she has an interest ; I

am farming on the 3,000 acres; I made a general crop on the same last year, and superintended its cultivation; I am cultivating also the land on which she lives; I went over to South Carolina when she did, and carried horses, mules, furniture and farming implements; I left some of the furniture in New Hanover, and some other things inconvenient for me to carry—some carts and a few hogs; I came back to Wilmington, N. C., two or three times, and got some supplies for my farms in South Carolina; I did my trading in Wilmington, N. C., and went down to see the party I left on the New Hanover place. These farms were rented, and were going down when the division was made; there was only a small house on my wife's part; I couldn't find any one to take it in charge as it was; it was idle the year 1886; I told my wife there was only one way to do with the property, and that was to move to South Carolina; that I could fix the place in two years so as to get rent; I told numerous parties before I left that I was going to move to South Caroina; I left South Carolina last Sunday to come here to this Court; I have crops on both places in South Carolina for the present year; I was confident I could fix the place in about two years; I expected to return in the winter of 1888, and I still expect to return and make my residence in North Carolina; I have never intended to change my residence; I was a justice of the peace in New Hanover, July 4th, 1887; I haven't tried a case since I left for South Carolina, and have not transacted any business as a justice of the peace.

The counsel for petitioner asked the Court to instruct the jury as follows:

That if the defendant left New Hanover County to go to South Carolina for the purpose of remaining there for a definite period, to-wit: for the period of two years, and at the time of such removal he intended to return at the expiration of such period, and that he did not at any time intend to

change his residence, except for the foregoing purpose, then the defendant was an actual resident of New Hanover.

The Court declined to give this instruction, but gave the following:

If in February, 1887, the petitioner Mosely moved with his family to South Carolina for the purpose of cultivating his wife's land there, and to make it his home until he got the property there in order, which he thought would take about two years, and then return to North Carolina, and he has so lived in South Carolina ever since, and is now living there, making that his actual home, returning to Wilmington only two or three times a year to purchase supplies for his operations in South Carolina, and looking after some property he had left in New Hanover County, then you will find that he was not a resident within the meaning of this issue.

The jury answered the issue, " No."

There was judgment dismissing the petition, and defendant appealed.

*Messrs. W. R. Allen* and *J. L. Stewart,* for the plaintiff.
*Mr. B. R. Moore,* for the defendant.

SMITH, C. J., (after stating the case.)    The Constitution of the State confers a right of homestead in land, which shall be for a limited time exempt from execution or other final process obtained on any debt, with the dwelling and buildings used thereon, " *owned and occupied by any resident of this State,*" not exceeding one thousand dollars in value—Cons., Art. X, Sec. 2—and the only inquiry the appeal requires us to make is, as to the correctness of the construction put upon the words, " *a resident of this State,*" by the Judge in his charge to the jury.

We think it clear that the Constitution does not contemplate a double or divided residence in different States, so that

if a similar exemption is provided in each, a party can have his exemption allotted to him in both.    The preceding quali-fying words, limiting the claim to a lot "*occupied*" as well as "*owned*" by a resident, forbids its assertion in a case like the present, when all the facts, outside of the defendant's declared intent, point to an *absolute and permanent removal.*    Can there be any doubt that a person removing, under like circum-stances, from South Carolina into this State with his family and domestic implements and furniture into a dwelling on land of his wife, which he cultivates for two successive years, would thereby become a resident entitled to all the rights incident thereto?    Or, if the removal was to other lands of his own, such occupation would not secure to him a home-stead therein, of which a creditor could not deprive him?  If he would thus acquire a right to an exemption in the State to which he goes, of necessity he loses it in the State from which he removes, for under similar laws he could not have it in both.    So, when all the acts of the debtor show an *actual* removal, as they do in this case, an effort to secure a constitutional exemption could not be thwarted by proof of declarations of an intent inconsistent with those acts in which it is expressed.    In like manner a secret or avowed intent to return to a forsaken home, when one has been ac-quired in another State, cannot preserve a privilege accorded to one who has a *present and existing residence*, and only so long as that residence lasts.

Very little aid can be derived from the law of domicile, and little more from the adjudications in other States, where the homestead is deemed a home protected from the creditor only when occupied as such, and ceasing when the place is no longer the debtor's home.

" When a resident removes from the State and becomes a resident elsewhere," remarks MERRIMON, J., in *Baker* v. *Leg-gett*, 98 N. C., 304, " he thereby abandons—relinquishes—his right of homestead; as to him, it becomes suspended—he

ceases to be within the terms, the purpose, or spirit of the constitutional provision, and all the property, both real and personal, that he · may leave behind him, becomes at once subject to the satisfaction of his debts."

The same proposition is enunciated by the Court in *Munds* v. *Cassidey*, 98 N. C., 558, where the party had been absent seven or eight years, employed on board a steamboat in Florida, yet *intended to return in the future* to his former home in Wilmington. In reference to this point, the Court say:

"Our Constitution and statute do not extend to such a case. The person must be *a resident actual and not constructive*, to be entitled to the exemption. This is made clear by the section securing the homestead to insolvent debtors, when "owned and occupied by any resident of this State." The benevolent provision is for our own citizens—those who have a residence among us—and must be construed as not embracing cases of mere domicile, when the rights incident to domicile may be retained until a domicile is obtained elsewhere."

It suggested itself during the argument that perhaps the question of intent should have been left to the jury in determining whether the first residence is retained, so as to secure the home of the debtor for his occupation when he should return. But upon further consideration we approve of the form of the charge, because all the facts, forming the hypothesis upon which the construction is predicated, develop an intent to change, as in fact the debtor does change, his residence, and the effect of his acts cannot be defeated by his declaration that he did not so intend. It is important that legal rights should rest upon facts proved, with their attending consequences, and not upon an undisclosed purpose at variance with them. So we are of opinion that the enumerated facts do in law, if so found by the jury, constitute a change of residence under this clause of the Constitution.

There is no error, and the judgment is affirmed.

MERRIMON, J., (dissenting.)   Without scrutinizing the instructions which the Court gave the jury, I am of the opinion that it should also have given that, or the substance of it, which the plaintiff requested it to give, because, there were two distinct views of the evidence that might reasonably have been considered, one—that given—favorably to the defendant, the other, as certainly favorable to the plaintiff.   When this is so, common justice requires that the Court shall submit both views, with proper instruction as to each, especially when the complaining party specially requests the Court to give that favorable to him.   In such a case it is error not to do so ; to submit one view and not the other will, generally, mislead the jury, more or less.

It is not questioned, it seems, that under the Constitution and statutes applicable, the plaintiff was entitled to a homestead, as claimed by him, if he had not abandoned it by removing from this State.

Parts of the evidence produced on the trial tended to prove that he did not leave with the view and purpose to abandon his residence in this State.   On the contrary, he testified in his own behalf expressly, that he did not intend, by going to the State of South Carolina, to change his residence; that he went there for a special temporary purpose, mentioned and explained, to be absent two crop years, and to return in the winter of 1888; that he still expected to return ; that he left some of his personal property in this State, and also certain real property—that in which he claims homestead—and to some extent he kept up his business relations in it.   The purpose for which he went, was not, of itself, such as necessarily implied permanent residence in South Carolina, at a place not distant from his place of residence in this State.   In view of such evidence, it seems to me, that the Court should have told the jury, that if it satisfied them that the plaintiff did not intend to

abandon his residence in this State, then they should respond to the issue submitted to them in the negative.

I do not question that if a resident of this State, entitled to a homestead therein, removes from it with the view of changing his residence, and does so, he thereby abandons his homestead and his right to have it, and leaves the real property in which it, was, or might ·have been allotted to him, exposed to the rights of his creditors to subject the same to the discharge of their debts due from him ; this is certainly true. *Baker* v. *Leggett,* 98 N. C., 304. But here the pertinent questions arise, who is such a resident? And when does he cease to be such? I will endeavor to answer them briefly.

The Constitution (Art. X, § 2,) secures to "any *resident* of this State," the right of homestead. Who is such a resident, in the sense of this provision? The plain purpose of it is to secure to such residents, as such, *a home—a homestead*—the same to be exempt from sale under execution, "or other final process obtained on any debt," and the interpretation of the word *resident* must be such as effectuates this purpose. A resident, then, in such sense, is a person who has his home—not his temporary home—not his home for a temporary purpose, but his permanent home—that which is established—in this State, and has no present purpose to abandon it, temporarily or permanently, while at such home or abroad, and when he leaves it, for any purpose, he has *animus revertandi.* It is not essential to such a home, nor does it in effect imply that the owner thereof—the resident therein—shall be constantly personally present at it; he may be temporarily absent from it, from the State in which it is situate, for the purposes of business or pleasure; his family may all be with him or absent elsewhere, and, nevertheless, his home—his residence—in a large sense, is in the State ; he continues to be a resident of it, and he and his family may return at their will and pleasure to their home. A resident

of this State means one who has his permanent home in it, whether he be at home or not, if he has *animus revertandi*. Hence, if a resident of the State goes out of it to remain absent, say, for years, in the execution of the duties of a public office, he does not by such absence lose his residence in it, and so, also, if a mechanic goes out of the State to build a house, or a mill, and return, or a builder of railroads goes out of it to be gone two or three or more years, to construct such a road, he does not lose his residence or the benefits arising from it. Nor any more will a farmer lose his residence, or the advantages arising from it, who goes beyond the State temporarily, for a year, or two, or three, to repair and put his farm there, or that of his wife, or that of another person, in condition to be useful and profitable and fit to be let. Mere absence from the State, in such and like cases, does not work a loss of residence or of its benefits, nor does it necessarily imply abandonment of residence, and, therefore, an abandonment of the right of homestead. Such going from the State—such absence from it—is not an abandonment of residence; it may be *evidence* of it, more or less strong, accordingly as the attendant facts or circumstances tend more or less strongly to show a purpose to abandon it. And, ordinarily, whether there has been such abandonment of residence or not is a question of fact to be determined by the jury, under proper instructions from the Court. It is, also, very largely a question of *intent*, and whatevor evidence tends to show this intent is competent. The claimant himself may testify as to his intent, and his testimony will have more or less weight accordingly as he is more or less worthy of credit, and as it may be strengthened or impaired by other evidence. What he says or does in this State, and in the State or other country to which he goes, may be competent evidence for or against him. If he claims permanent residence, by words or acts, in the State to which he goes; if he claims and exercises the right of citizenship there; if he

votes there, and does the like acts, such facts would be strong evidence against his right; but if his conduct showed a purpose to return to this State, and that he had not abandoned his residence here, the facts would be evidence for him. While the laws of the State to which he goes may extend to him advantages as a temporary resident there, this would not be conclusive against his right of residence here; the residence here depends upon whether he does or does not abandon it. If he does not, he is entitled to the benefits extended to the residents of the State by its Constitution and laws, although temporarily absent. Thompson on Hom. and Ex., § 263 *et seq.*

What I have said is not in any degree in conflict with what is decided in *Munds* v. *Cassidey*, 98 N. C., 558. There, clearly, the appellant had abandoned the State—he was a sort of wanderer, without any fixed purpose to return to it— had been absent seven or eight years—had a vague purpose to return to it. If it had appeared that he went abroad on a vessel making a voyage to Liverpool, or around the world, or to the Arctic seas, to be absent a year, or two, or three years, but with a *fixed*, settled purpose to return to his *home here*—in this State—the case would have been very different. Mere removal from the State, no doubt, generally raises a presumption of abandonment, but this presumption may be rebutted by sufficient evidence.