FULTON *v.* ROBERTS.

WINSTON FULTON v. RUFUS ROBERTS et al.

*Execution Sale—Homestead—Resident—Domicile—Burden of Proof.*

1. A sale of land, under execution on a judgment recovered on a debt contracted since 1868 against a resident of this State entitled to a homestead, is void, unless a homestead has been allotted, notwithstanding the fact that the tract of land so sold is other than that upon which the judgment debtor resides, and not contiguous thereto.

2. Although an instruction to the jury, in the trial of an issue relating to the right of a party to homestead, confounds the definitions of "residence" and "domicile," yet it is a harmless error and not subject to exception when an accompanying and more specific instruction as to the restricted meaning of the words "a resident," as used in Art. X., § 2 of the Constitution, must have led the jury to understand that one who actually removed from the State for a limited period, even *animo revertendi,* would forfeit his right to a homestead by failure to occupy the place protected by the Constitution.

3. The right to homestead exemption in this State ceases only when, by reason of a change of residence, it begins in another State, or when a similar occupancy of a place of residence here by one coming from another State would entitle him to the benefit of section 2, Art. X. of the Constitution.

4. The burden is upon one claiming an exemption in lands, sold under execution against him, to show that no homestead had been allotted to him; when this is done, the presumption of the regularity of the judicial proceedings and sale is rebutted.

5. When it is admitted or proven that a judgment debtor has been a resident of this State, the legal presumption is that the status continues, and the burden of showing a change of domicile, when it becomes material to do so, rests upon him who asserts the change.

This was a CIVIL ACTION to recover possession of land, tried upon a single issue, before *McCorkle, J.,* and a jury, at the August Term, 1890, of the Superior Court of SURRY County.

The plaintiff claimed under a Sheriff's deed, made in pursuance of a sale of the *locus in quo,* made by S. H. Taylor, Sheriff of Surry County, to satisfy an execution in his hands against the property of defendant Rufus Roberts.

The defendants resisted plaintiff's recovery, and claimed that the Sheriff sold the property without first having allotted homestead to the defendant Rufus Roberts, and that the sale was therefore void.

The plaintiff contended:

"1. That under the admissions filed of record there was no necessity for laying off homestead before the sale.

"2. That defendant Rufus Roberts was not entitled to have homestead allotted him, because at the time of said sale by the Sheriff he was not a resident of this State."

The admitted facts filed of record are as follows:

" It is admitted that at the time of sale by Sheriff of the lot in controversy, that the lot was a lot on which there was a cabinet shop, one hundred feet by two hundred feet, in Mount Airy, and unoccupied, and that the defendant owned and occupied as a residence, if not a resident of Georgia, the Sulphur Springs Tract, of seventy-five acres of land, four miles from Mount Airy, and that this tract was worth $5,000 or more."

The following issue was submitted:

" *At the time* of the sale of the *locus in quo*," on the 27th day of April, 1881, " was the defendant Roberts a resident of North Carolina?"

Upon this issue alone there was a large amount of testimony offered by the plaintiff, tending to show that prior to said sale, the defendant Rufus Roberts had sold off at auction and privately all of his real estate, consisting of plantations and town lots in Mount Airy, except the lot in controversy and two or three other lots sold on same day by the Sheriff, and except the Sulphur Springs tract, which tract he was offering for sale; also tending to show that he had bought real estate in Milledgeville, Georgia, and erected buildings thereon and farm near by; also evidence of declarations made by Roberts to various persons, both before and after the sale, claiming Georgia as his home, and disclaiming North Carolina, declaring he could not be induced to live here again.

The defendant testified in his own behalf that, while he went into the mercantile and farming business in Georgia, he had never abandoned North Carolina as his home, and offered much evidence to corroborate him and to sustain the affirmative of the issue.

There being no exception taken by plaintiff to evidence, it is deemed unnecessary to set it out in full.

After the close of the evidence and the argument of counsel, the Judge charged the jury, in writing, as follows:

[" The burden of satisfying you by a preponderance of testimony that the defendant Roberts was a non-resident at the time of the sale is thrown upon the plaintiff.] The only issue you have to try is whether, at the time of the sale of the *locus in quo*, the defendant Roberts was a resident of the State of North Carolina.

["A resident denotes one who has a permanent dwelling to which the party, when absent, intends to return. The residence of a person continues until he acquires another by actually removing to another country with the intention of remaining in the latter altogether for an indefinite period or a definite period. Two things must concur to constitute residence: first, occupancy; secondly, the intention to make it a home. If these two concur, it makes no difference how short his residence may be in the new residence.]

" The words a resident of this State, employed in the Constitution, Art. X., § 2, in respect to homestead, have a more restricted meaning than that usually given to domicile; to entitle a person to the constitutional exemption he must be an actual and not a constructive resident. Where the facts show an actual removal from the State, even for a definite period, the person so removing ceases, so long as he remains absent, to be a resident of the State in respect to his right to a homestead, although he may have the intent to return and resume his residence.

[" So, if you find that defendant Roberts actually removed to the State of Georgia for a definite period or an indefinite period, and had his home there, then that would be his residence, and he would not be entitled to the homestead in this State, and you will answer No.]

[" But if he only went to Georgia for the purpose of trading in the winter and returning in the spring to his home in North Carolina, and did not actually move to Georgia and settle there as his home, then he would be entitled to a homestead in this State, and you will answer the issue Yes."]

The jury found the issue " Yes," and the plaintiff's coun-
sel moved the Court for a judgment for the possession of the
land upon his Sheriff's title and the admissions filed of record,
insisting that there was no necessity, under the law, for the
allotment of a homestead before the sale.

Motion refused by the Court, and plaintiff excepted.

The plaintiff then moved for a new trial because of error
in the instructions to the jury given by the Court, and
assigned as erroneous that part of the instructions appearing
in brackets. Motion overruled, and plaintiff appealed.

*Messrs. Watson & Buxton* and *A. E. Holton*, for plaintiff
(appellant).

*Messrs. Glenn & Manly*, for defendant.

AVERY, J.: Two questions are raised by the appeal: (1) If
it be admitted that the defendant Rufus Roberts was a citizen
of North Carolina, could the Sheriff lawfully sell, under the
execution issued against him upon a judgment recovered on
a debt created since 1868, a tract of land belonging to him
other than that upon which he lived and distant four miles
from it, when no homestead had been allotted to him?
(2) Was the definition of "a resident," given in the instruc-
tion of the Court to the jury, because of its inaccuracy or
inconsistency, calculated to mislead them in passing upon
the issue submitted?

While it may have been supposed by the framers of the
organic law that a debtor would usually elect to have his
homestead allotted in his dwelling-place and the surround-
ing land, "his choice is not positively restricted to that, nor
to contiguous land." *Mayho* v. *Cotton,* 69 N. C., 289; *Hughes*
v. *Hodges,* 102 N. C., 236; *Flora* v. *Robbins,* 93 N. C., 40. The
Constitution guarantees the right of selection between dif-
ferent tracts in express terms, if, as suggested in *Mayho* v. *Cot-
ton, supra,* the power would not have been implied neces-

sarily in the grant of exemption in a home worth $1,000. Constitution, Art. X., § 2.

The sale having been made to satisfy a debt created since the homestead exemption became a part of the Constitution, was void, therefore, if the defendant was, as a resident of this State at that time, entitled to the benefit of that privilege. *Long* v. *Walker*, 105 N. C., 90. It is true that the general definition of "a resident" given by the Court was incorrect, and embodied the very terms in which this Court has defined "domicile," which is a much more comprehensive term. *Horn* v. *Horn*, 9 Ired., 99; *Plummer* v. *Brandon*, 5 Ired. Eq., 190. Generally, one who has acquired a domicile at a given place must have resided there with the intention of making it a home, and the fact that he temporarily resided elsewhere, with the purpose of returning to such home, would not impair any right growing out of having become domiciled there. *Fleming* v. *Stroley*, 1 Ired., 305; *Commissioners* v. *Commissioners*, 101 N. C., 520. But, however erroneous the general proposition may have been, the more specific instruction as to the "restricted meaning of the words 'a resident,'" in Article X., § 2 of the Constitution, must of necessity have been understood by the jury and followed in answering the issue submitted to them. If the jury were made to comprehend what was meant by the words as used in the Constitution in reference to the right of exemption, and that their inquiry was limited to ascertaining whether the facts brought the defendant within the definition of "a resident," as the words are there used, the confounding of domicile with residence in the abstract proposition was a harmless error. The instruction which bore directly upon the issue was as follows: "The words 'a resident of this State,' employed in the Constitution, in respect to homesteads, have a more restricted meaning than is usually given to 'domicile.' To entitle a person to a constitutional exemption, he must be an actual and not a constructive resident. Where the facts show an actual

removal from the State, even for a definite period, the person so removing ceases, so long as he remains absent, to be a resident of the State, in respect to his rights to homestead, although he may have the intent to return and resume his residence." Although a juror might have thought that, for some purposes, " a resident" might mean one who is domiciled, he could not fail to understand from the foregoing instruction that one who actually removed from the State for a limited period, even *animo revertendi*, would forfeit his right of exemption by failure to occupy the place protected by the Constitution for the purpose of furnishing him a home. Indeed, the explanatory proposition embodies substantially the language used by the Court in *Lee* v. *Moseley*, 101 N. C., 311, and in *Munds* v. *Cassidey*, 98 N. C., 563, to draw the distinction between a domicile, as understood in reference to the right of suffrage or of administration, and a resident, such as was essential to the retention of the right of exemption under the Constitution.

We see no error in the last paragraph of the charge. If the defendant did not actually remove to Georgia, and make it even a temporary home, but visited that State for the purpose of trading in the winter, and returning to his home in North Carolina in the Spring, he acquired none of the advantages and must be subject to none of the disadvantages there incident, in contemplation of law, either to being a resident or domiciled during such a sojourn. Though he may have been accompanied by his family, he would not have been entitled to the benefit of similar exemption laws as a resident of Georgia and, adopting the test suggested by this Court, we must conclude that the right of exemption ceases here, when, by reason of a change of residence, it begins in another State, or when a similar occupancy of a place of residence by one coming from a sister State to this State would entitle such person to the benefit of section 2, Article X. of our Constitution. *Lee* v. *Moseley*, and *Munds* v. *Cassidey*, *supra;* *Baker* v. *Leggett*, 98 N. C., 304.

It is not necessary to a decision of the questions involved in this case to advert to the difference in the character of the residence or domicile, which would entitle one to the right of suffrage, protect him against attachment, or qualify him to administer on an estate. *Boyer* v. *Teague*, 106 N. C., 576; *Wheeler* v. *Cobb*, 75 N. C., 21; *Hannon* v. *Grizzard*, 89 N. C., 115; *Roberts* v. *Cannon*, 4 Dev. & Bat., 256; *Carden* v. *Carden*, 107 N. C., 214; *Abrams* v. *Pender*, Busbee, 260.

The *onus* was upon the defendant to show that a homestead had not been allotted to him, as in the absence of any evidence beyond the proof of judgment, execution, levy and sale, all apparently regular, the presumption would have been in favor of the validity of plaintiff's title. *Mobley* v. *Griffin*, 104 N. C., 112; *Buie* v. *Scott*, 107 N. C., 181; 2 Wharton on Ev., §§ 1318 and 1319. But as soon as it appeared in evidence that a homestead had not in fact been allotted, the presumption in favor of the regularity of judicial proceedings was rebutted, as it would have been if the same fact had appeared upon the face of the record. *Mobley* v. *Griffin*, and *Buie* v. *Scott, supra.* It would not have been incumbent on the plaintiff, in a case where the record showed that no exemption had been allowed, to negative the possibility of non-residence. But if it had not been decided in both of the cases cited that proof that no homestead was allotted upon what appeared, either from the date of the judgment or of the contract, to be a new debt, rebutted the presumption of regularity in the sale, another principle may be invoked, which is clearly decisive of the question as to the correctness of the charge. It was shown and admitted by both parties that the defendant had been a resident of Surry County, in the State of North Carolina, prior to his purchase of the property and engaging in mercantile business in Milledgeville, Georgia. That fact being settled, it was incumbent on the plaintiff to show that his place of residence was not still the same, because the law presumed the status once shown to

continue (2 Wharton, *supra*, §§ 1285 and 1296), generally, and especially as to place of residence, and the duty resting upon a plaintiff to show his right to recover shifted therefore to Fulton, upon the rebuttal of the presumption in favor of the regularity in the sale, on which his *prima facie* case was dependent. The burden of showing a change of domicile, when it becomes material to do so, " unquestionably lies on the party who asserts the change" (5 Am. & Eng. Enc., 865); and "it is presumed that the residence of a person continues to be in the place where it is proved to have been until the contrary is shown." 17 Am. & Eng. Enc., 76.

We conclude, therefore, that in view of the admitted fact that defendant had resided in Surry County, the burden of showing that he had subsequently become a resident of another State when his land was sold rested upon the plaintiff, and there was no error in so instructing the jury.

Affirmed.