M. A. JONES v. B. I. ALSBROOK, Sheriff, et al.

*Personal Property Exemption—Time of Valuation of Exemption—Levy and Sale under Execution—Resident of the State—Removal from State, Purpose of—Wrongful Sale by Sheriff—Measure of Damages.*

1. It is only a resident of this State who is entitled to have his personal property to the value of $500 exempted from *sale* under execution.

2. So long as an execution is in the officer's hands and in force, the preliminary action of the appraisers is *in fieri* and capable of correction and amendment, and it is a right both of the debtor and the creditor that the exemption shall be ascertained up to and just before the process is executed by a sale, so that, in behalf of the debtor, the exemption may be enlarged, if any property to which he is entitled has been omitted, and so that, in behalf of the creditor, no exemption shall be allowed to the debtor if it appear at the sale that he is not entitled to the same; therefore,

3. In the trial of an action against a Sheriff for wrongfully selling property without setting apart plaintiff's personal property exemption, the defendant was entitled to have submitted to the jury an issue involving the question whether the plaintiff was, at the time of the sale, a resident of the State.

4. The residence of a person in this State entitling him to a personal property exemption must be *actual* and not constructive, and in case of his temporary removal it is 'necessary to ascertain the intent and purpose of his removal in order to determine whether he is a resident; hence in the trial of an action against a Sheriff for his failure to have set apart to plaintiff, her personal property exemption, and selling her property, it appeared that the property was seized while *in transitu* to another State to which she and her husband went a 'few months after the levy and where they remained for some months, the defendant was entitled to ask plaintiff whether, at the time of the sale of the property, she had not abandoned her residence in this State and started to Virginia to engage in business.

5. When property has been wrongfully sold by a Sheriff in disregard of the plaintiff's right of exemption, the measure of damage is the actual loss sustained thereby. not the value of the property at the time of the levy, and when the property has been regained by payment of judgment debt or other fixed sum that would be the measure, augmented by any further actual expense resulting from such wrongful sale.

This was AN ACTION for damages by plaintiff against B. I. Alsbrook, Sheriff of Halifax County, and his co-defendants, sureties upon his official bond, for failure and refusal to set apart her personal property exemption in the chattels described in the complaint heard before *Graves, J.,* and a jury, at the March Term, 1894, of the Superior Court for HALIFAX County.

The plaintiff tendered these issues:

"1. Was the plaintiff a resident of North Carolina when the levy was made?

"2. What damage has plaintiff sustained?"

The defendants tendered this issue:

"Was the plaintiff a resident of North Carolina at time of sale?"

The Court submitted issues tendered by plaintiff, and refused to submit issue tendered by the defendants, and the defendants excepted.

The plaintiff was introduced on her own behalf and testified that the goods were her property, and gave the value of each article separately, all of which aggregated $368.50. That at time levy was made she was a resident of Edgecombe County, North Carolina; that she never went to Suffolk, Virginia, to live; that she and her husband did not go there at all until three or four weeks after the levy, and then stayed only eight months; and then returned to Edgecombe County, where they now reside. That goods were levied on in depot at Hobgood by Sheriff to satisfy an execution against her in favor of R. C. Brown for $88.93, and they were in transit to Suffolk, Virginia. That she was a free trader.

The defendant's counsel, upon cross-examination, asked the witness if at time of the sale she had not abandoned her residence in Edgecombe County and started to Suffolk to engage in business. The plaintiff objected. Objection sustained as to so much of question as relates to purpose of plaintiff, and defendants excepted.

The plaintiff stated that she was present at time of sale of goods by Sheriff, and upon cross-examination the defendants proposed to show that she came immediately into the possession of the goods after the sale for the purpose of showing that she became the purchaser, and what she paid for them.

Objection by plaintiff. Objection sustained, and defendants excepted.

R. C. Brown was introduced by defendants and asked if Owen Jones, husband of plaintiff, had not said just before the levy that he had rented a house in Suffolk, and that he was going to leave this State? Plaintiff objected. Objection sustained, and defendants excepted.

The defendants in apt time asked the following instructions in due form:

"That if plaintiff had abandoned her residence in this State, and the goods were in transit to Suffolk, Virginia, she is not such a resident as is entitled to a personal property

exemption." This charge was refused, and defendants excepted.

"That the measure of damages in this case is the amount which plaintiff paid to recover the goods." This charge was refused, and defendants excepted.

The Court charged the jury that, if the evidence of both plaintiff and defendants was believed, the plaintiff was a resident at time of levy; that it made no difference whether she intended to remove to Virginia or not; that she was a resident of this State till she actually carried out such intention and left the State for the purpose of residence in Virginia, and instructed the jury to answer the first issue Yes, if they believed the evidence. The defendants excepted to this charge.

The Court charged the jury that the measure of the plaintiff's damages was the value of the property at the time of the levy, and that in ascertaining her damage it would make no difference whether she came immediately into the possession of the property at the price for which it was sold or not. The defendants excepted.

The Court further charged the jury that if plaintiff was present at time of sale by sheriff, and assented to sale in manner it was made, and assented that goods should only bring $88.93, she cannot recover a greater sum, it appearing in evidence that the goods only brought that sum at sale.

The issues were found in favor of plaintiff, and her damages assessed at $250. Judgment for plaintiff, and appeal by defendants.

*Mr. Thos. N. Hill*, for plaintiff.
*Mr. Robert O. Burton*, for defendants (appellants).

MACRAE, J.: It is a resident of this State who is entitled under Article X, section 1, of the Constitution, to have his personal property, to the value of $500, exempted from *sale*

115—4.

under execution. To carry out this provision of the Constitution, section 507 of *The Code* was enacted, under the provisions of which section, whenever the personal property of any resident of this State shall be levied upon, and the owner shall demand that the same, or any part thereof, " shall be exempt *from sale under such execution,*" appraisers are provided to lay off the exemption, " which articles shall be exempt *from* said levy."

First, the levy; then the demand for the appraisement; next, the appraisement; and last, the exemption from the levy theretofore made, and consequently from sale under the execution of the property set apart.

In *Pate* v. *Harper,* 94 N. C., 23, it was said : " We think the debtor is entitled to have his exemption ascertained up to and just before the process is executed by a sale. While the process is in the officer's hands in full activity, the preliminary action of the appraisers is not conclusive, but remains *in fieri,* capable, at their instance, under the call of the officer, at least, of correction and amendment. If property has been omitted which ought to have been put on the list, but was not known at the time to belong to the debtor, so that it could be done, the appraisers ought to have the power, and we think do have it, to enlarge the exemption, so that none which should be exempt shall be sold from him. The mandate of the statute is that the officer shall make his levy upon the entire personal estate subject to seizure under execution, *but, before he sells,* to have so much of it set apart for the debtor, within the limited value, as he may select, and when insufficient, all being below the value, such selection is unnecessary."

Surely the reason of the opportunity given to the judgment debtor up to the last moment to have his exemption set apart, will apply with equal force to the judgment creditor, so that, if it be made to appear at the sale that the debtor is entitled to no exemption, the same will not be

allowed.   It follows that the issue tendered by defendant was the proper one, and should have been submitted, the duty of the sheriff *to levy* being plain, but the question being whether he should have taken the proper steps, on request of the defendant in execution, to have laid off to her the personal property exempt from sale by the laws of the State.   It being ascertained, then, that the time at which the exemption operated was that of the sale, the next question was, whether the defendant in execution was at that time a resident of this State.   She testified that, at the time of the *levy*, she was a resident of this State ; that she never went to Suffolk, Va., to live; that she and her husband did not go there at all until three or four months after the levy (it is not stated whether this was before or after the sale), and then stayed only eight months, and returned to Edgecombe County, in this State, where they now reside.   The cross-examination was directed to the question, whether she had not abandoned her residence in North Carolina and started to Virginia to engage in business.   On objection, his Honor would not require her to answer as to her purpose in going to Virginia.

In this exception is, to some extent, involved the meaning of the word *resident,* as used in the Constitution (*supra*), and at what time and under what circumstances one ceases to be. In *Munds* v. *Cassidey,* 98 N. C., 558, upon the question, whether H. C. Cassidey was entitled to a personal property exemption, he having been absent from the State for seven or eight years, employed upon a steamboat plying in the waters of Florida, expecting in the future to return to Wilmington, the Court said : " Our Constitution and statute do not extend to such a case.   The person must be a resident, actual, and not constructive, to be entitled to the exemption."

In *Fulton* v. *Roberts,* 113 N. C., 421, in relation to the laying off a homestead, the definition by the trial Judge of the word " resident " having been disapproved, as confounding residence with domicile, the Court said : " We must con-

clude that the right of exemption ceases here, when, by rea-
son of a change of residence, it begins in another State, or
when a similar occupancy of a place of residence by one
coming from a sister State to this State, would entitle such
person to the benefit of section 2, Article X, of our Constitu-
tion."

It will not be necessary to trouble ourselves with the dis-
tinction, sometimes very plain, and at others most shadowy,
if, indeed, there be any, between residence and domicile. It
is well understood that a domicile is in its strict legal sense
one's true, fixed and permanent home, to which, whenever
he is absent, he has the intention of returning. *Horne* v.
*Horne*, 9 Ired., 99. And the word " residence," while often a
word of not so restricted a meaning, in some instances in no
respect differs from domicile. There may be an actual and a
constructive residence. In *Lee* v. *Moseley*, 101 N. C., 311, the
word " resident," as employed in Article X, section 2, of the
Constitution, is restricted to the former class, and simply
means one who has his permanent home in this State. The
same term is used in the first section as well as the second of
Article X to designate the persons entitled to homestead and
to personal property exemptions.

In order to determine whether one is a resident of this
State in this sense, it is necessary, in some instances, to ascer-
tain the intent of the party. When one has been such a res-
ident, a removal from its limits, with intent not to return,
will at once deprive him of the privileges incident to his res-
idence here; but the absence may be intended to be of such
a temporary nature as to avoid the consequence above—it is
for the jury to determine. In which case it may be impor-
tant to learn the purpose of the party and the circumstances
of the removal. Was it for the purpose of engaging in bus-
iness? the kind of business? did he take with him all of his
property? These may be circumstances which the jury
should consider. In this view, the question, whether this

JONES v. ALSBROOK.

plaintiff did not intend to engage in business in Suffolk was pertinent to the inquiry, whether at the time of the sale, if she were then actually in Virginia, or were on her way there with all her property, she had then abandoned her residence in North Carolina.

As it is evident that there must be a new trial, we will not consider the other exceptions, only as to the instructions given by his Honor upon the measure of damages.

If on another trial it should be found that the plaintiff was a resident of this State, having here her home at the time of the sale of her personal goods in disregard of her rights of exemption, it will be necessary to consider the measure of the damage to which she will be entitled under the law.

This would be full compensation for the loss sustained by her as the result of this disregard of her rights and the sale of her property, which, according to the evidence, was of less value than $500, not the value of the property at the time of the levy, but the actual loss sustained by her. If she regained the property upon the payment by her of the amount of the judgment debt, or any other fixed sum, this would be the measure, and it might be augmented by any further actual expense to which she might have been subjected by the sale of her property.

In *Winburne* v. *Bryan*, 73 N. C., 47, where the Sheriff, having an execution in his hands against A, sold the land of A without serving upon him the written notice as required by law before the sale of land under execution, the Judge below held that plaintiff, suing the Sheriff, was only entitled to nominal damages, unless he proved that the property sold for less than it would have sold for if the notice had been given. "The execution was for only about twenty dollars, the land was worth $300 in cash; the plaintiff, a short time after the sale, gave the purchaser $100 for his bid, that is, paid up the execution cost and $100 over and above. The plaintiff is out of pocket $100 over and above the amount of the exe-

cution by reason of the default of the defendant, and why he should not be indemnified to that extent we are unable to conceive. Indeed, we incline to the opinion that the jury might have been justified in going further and making some allowance for the inconvenience of being compelled to raise $100 extra, when, had the defendant done his duty, twenty dollars would have answered." The decision goes further and intimates some reasons for punitive damages in that case, which do not apply to the present.

"If the owner has recovered property taken from him by the wrong-doer, that fact will reduce the damages, but the owner is allowed compensation for his expenditures in recovering the property. Thus, where the property was seized and sold by the defendant, a Sheriff, and was repurchased by the plaintiff from the one who bought it at the Sheriff's sale, it was held that the measure of damages was the amount paid to repurchase the property." 1 Sedgwick on Damages, sec. 58.

New Trial.