## SOLOMON CHITTY v. J. M. CHITTY.

*Homestead—Fugitive from Justice—Resident—Constitution, Art. X., Sections 1, 2, 3, 8.*

1. The Constitution guarantees the right of homestead to every resident on the land occupied by him, and whoever denies the right must show that the case falls within the constitutional exceptions, or that the owner has lost it by non-residence.

2. An absence from this State for a period of two years by a land owner, who leaves the State to avoid arrest and trial under a warrant for a crime, but who has the *animus revertendi* throughout his absence, does not debar him of the right of homestead; and a sale of his land under attachment and execution without allotment of the homestead is invalid.

3. The proper definitions of the terms domicile and residence commented on by the Chief Justice.

CLARK, J., dissents.

CIVIL ACTION, heard upon the report of Referee, and exceptions thereto filed by defendant, before his Honor, *Judge Norwood*, at the February Term, 1896, of FORSYTH Superior Court.

There was judgment for the defendant and plaintiff appealed. The facts appear in the opinion of the Court.

*Mr. J. S. Grogan*, for plaintiff (appellant).
*Messrs. Watson & Buxton*, for defendant.

FAIRCLOTH, C. J.: The facts found by the referee and sustained by the Court are as follows:

"1. That plaintiff in November, 1887, owned and occupied, as his home place, the land now in controversy, and left the State in that month to avoid a warrant out against

him for false pretense, with the intention of returning as soon as the case against him should be thrown out of court, and that his wife and children remained on the place until plaintiff returned about Christmas, 1889 ; that the plaintiff spent his time in visiting relatives in various states, intending to return to this State when he believed the charge against him to be buried.

" 2. That during his absence an attachment issued and the land was sold and the defendant purchased it, no homestead having been assigned to the plaintiff."

His Honor held that the plaintiff, during his absence, was not a resident of this State, and therefore not entitled to a homestead.

This is the only question presented.

The Constitution guarantees the right to a homestead to every resident on the land occupied by him, and whoever denies the right must show that the case falls within the constitutional exceptions, which is not the case in this instance, or that the owner has lost it by non-residence.

Residence and domicile are so nearly allied to each other in meaning that it is difficult sometimes to trace the shades of difference, although in some respects they are distinct ; and the definitions of residence are sometimes apparently conflicting, owing mainly to the nature of the subject with which the word is used, the purpose being always to give to it such meaning and force as will effectuate the intention of that particular statute. The great bulk of cases in the books are cases of statutory residence, as applied to the subjects of voting, eligibility to office, taxation, jurisdiction in divorce proceedings, probate and administrations, limitations, attachments, and the like cases. The word is frequently used in the sense of bodily presence in a place, sometimes a mere temporary presence and sometimes the most settled and permanent abode in

CHITTY v. CHITTY.

a place, with all the shades of meaning between these extremes, and also with reference to the distinction between an actual and legal residence. So, it seems entirely proper to consider its meaning in connection with the subject matter and the purpose of the statute in which it is found, as well as the relation of the citizen to the subject matter.

The leading purpose of the Constitution (Art. X., Sections 1, 2, 3, 8,) is to secure the homestead to the debtor and his family, and the term "resident" therein should be so construed as to accomplish that purpose, unless there should be found some positive or necessary and reasonable rule of law to the contrary.

Absence from the State does not necessarily mean a change of residence, in the legal sense, as that question depends upon the intention and other facts. A protracted residence in another state, engaging in a permanent business, with no home in this State, would be at least inconsistent with a residence here.

"Residence" strictly construed would defeat the object of the Constitution (Art. X.) in relation to homesteads. If a citizen of Raleigh should go to Baltimore on business, he could not be said to literally reside in Raleigh during his absence, but, by allowing the doctrine of *animo revertendi* its reasonable force, the business is attended to, and the purpose of the law is secured.

The question of domicile and residence has been so fully and frequently discussed by this Court that it would be superfluous work to repeat what has been decided. We will only refer to *Finley* v. *Saunders*, 98 N. C., 462 ; *Fulton* v. *Roberts*, 113 N. C., 421 ; *Hannon* v. *Grizzard*, 89 N. C., 115, and the several cases therein referred to, and to *State* v. *Johnson*, at the present Term.

The general rule from the cases is that, when one leaves

the State with the intention of returning,.he does not lose
his residence here.    This will do for the present case, but
to avoid any extreme conclusions from the above state-
ment, we will say that circumstances may easily lead to a
different result ; for instance, if the lapse of time should be
long enough to rebut such intention, or if a residence
should be acquired in another state, or by engaging in
permanent business elsewhere without the *animo rever-
tendi,* or by assuming the duties and privileges of a citizen
in such other state.    The question is one of law and not
of morals, and we could not inquire into the latter.

Our opinion is that the court below committed error,
and that the plaintiff is entitled to recover on the facts
now in the record before us.

Reversed..

CLARK, J. (dissenting) :    The sole question in this case
is whether a fugitive from justice, wandering about in
other states, without intention of returning until a crimi-
nal indictment against him in this State can be procured
to be dropped, and upon whom, therefore, personal service
of summons cannot be made, is liable to be brought into
court in a civil action by attachment of his property and
publication, and if he can set aside the sale under such
attachment proceedings on the ground that his homestead
was not set apart.    The question is in reality a single one,.
because unless such fugitive is a non-resident the attach-
ment will not lie, and if he is a non-resident he is not enti-
tled to the homestead.    It would be singular if a party
could thus not only defy the criminal process of the court,.
but by such indefinite and illegal absence from the State
could also avoid service of civil process, and on his return
could—as this plaintiff is attempting to do—take back his.
property with his debt paid by the purchaser at the sale
which had been ordered by a court of justice.    .

CHITTY v. CHITTY.

It would seem that the decisions of the Court have been conclusive against this very ingenious and novel proceeding.

In *Wheeler* v. *Cobb*, 75 N. C., 21, it was held that one voluntarily removing to another state for the purpose of discharging the duties of an office of indefinite duration, though he may occasionally visit the State and may have the intent to return at some future day, is a non-resident for the purposes of an attachment. This has been often cited with approval, and as late as *Carden* v. *Carden*, 107 N. C., 214, this Court, again citing it, adds, " The prominent idea is that the debtor must be a non-resident of this State, not that he must be a resident elsewhere. The essential charge is that he is not residing or living in this State *where process may be served so effectually as to reach him.* In other words his property is attachable, if his residence is not such as to subject him *personally to the jurisdiction of the court and place him upon equality with other residents in this respect.*" The Court then goes on to say that " visiting this State only once or twice a year, and with a general intention of returning at some indefinite time and making his home here," would not exempt his property from attachment. The Court further adds : " Non-residence within the meaning of the attachment law means the actual cessation to dwell within a state for an uncertain period, without definite intention as to a time for returning, although a general intention to return may exist." For these propositions the opinion cites, besides *Wheeler* v. *Cobb, supra,* Waples on Attachment, 35 ; *Weitkamp* v. *Loehr*, 53 N. Y. Supr. Court.

If former deliverances of our own Court are to guide us this would settle the present case, for this fugitive from justice not only did not " visit the State twice a year," but so far from having an intention to return at a definite

CHITTY v. CHITTY.

time, he had a most definite and fixed determination, for a very good and sufficient reason—the terror of the indictment which had been returned against him—not to return until " this charge against him was buried." There being no Statute of Limitation after indictment found, it was uncertain as to time and manner when the fugitive could procure the " burial " of the proceedings, and he did not return till it was done, and he was in fact absent from the State somewhat over two years. It was not necessary, as we have seen, that a residence should be obtained in another state : it is sufficient if the party has ceased to reside in this State.

In *Mayor* v. *Genet*, 4 Hun., (N. Y. Supreme Court,) 487, it is held that a fugitive from justice who leaves the state is a non-resident and his property is liable to attachment. BRADY, J., says : " The effect of such an act must be to deprive the person committing it of his character as a resident. He places himself designedly beyond the reach of the power of the State by leaving its territory and in terror of its laws. He abandons deliberately his residence. When a man thus conducts himself, *he waives acquired rights which depend upon his presence within the state*, or circumstances which warrant its presumption, and is to be treated as if he were not present, *and had no rights founded upon that legal attitude.* He became, in other words, to all intents and purposes, for the enforcement of remedies, a non-resident of this state." On appeal this decision was affirmed by the N. Y. Court of Appeals by a unanimous bench. 63 N. Y., 646. The same ruling was made as to another fugitive from justice in Thames *Insurance Co.* v. *Dimmick*, 51 N. Y., (S. R.,) 41. See also Kneeland on Attachments, Sections 182–193, and cases cited, and 21 Am. & Eng. Enc., 125, note 3.

If the attachment was valid, as under the above decis-

ions in our own Court and elsewhere it must be, the purchaser acquired a good title, for the plaintiff, if a non-resident, was not entitled to claim a homestead, which is given by our Constitution only if the lot, or tract "*is owned and occupied by a resident of this State.*" This point has been uniformly so held—indeed the language of the Constitution could bear no other construction.

In *Baker* v. *Legget,* 98 N. C., 304, MERRIMON, J., says : " The right of *homestead,* provided and secured by the Constitution is incident to residence in this State. Only residents have and are entitled to it. A non-resident has no such right, although he may be the owner of real estate situate in the State." And the opinion goes on to hold that " when a resident removes from the State " he " abandons and relinquishes his right of homestead." In the next case in order—*Finley* v. *Saunders,* 98 N. C., 462, SMITH, C. J., says that " by the removal of the debtor out of the State, with a view to a permanent residence elsewhere, although his family do not follow him to his new abode, he forfeits his constitutional right " to the homestead." We have seen it is held above that it is not essential to becoming a non-resident that another residence shall be acquired, or contemplated elsewhere, if residence in this State has ceased with only an intention to return at an indefinite time. But this case is important as showing that the right to the homestead depends upon the residence of the debtor himself and can not be held vicariously for him by his wife and children remaining here. In *Munds* v. *Cassidey,* 98 N. C., 558, SMITH, C. J., holds that " the person claiming the exemptions from execution must be *an actual, not a constructive resident.* Therefore, one who has removed from the State with the expectation of returning at some uncertain time is not entitled to the exemptions." In that case the debtor was employed upon

a steamboat in Florida and expected to return to this State. The learned Chief Justice further adds that this "benevolent provision" is for *actual residents*, and must not be construed as embracing cases of mere domicile, which is always retained till a right of domicile is obtained elsewhere. This too will remove the confusion brought about by cases like *Hannon* v. *Grizzard*, as to the right of suffrage, eligibility to office and the like. All these depending upon domicile, the right to vote or hold office can be retained by constructive residence when no actual residence, with an *animus manendi*, has been acquired elsewhere. But, as to attachments and homestead, we see by this and other decisions above cited, the rights are determined when actual residence ceases in this State. This is re-affirmed in *Lee* v. *Moseley*, 101 N. C., 311, which holds "The words 'a resident of the State,' employed in the Constitution — Art. X., Sec. 2—in respect to homesteads, have a more restricted meaning than that usually given to *domicile;* to entitle a person to the constitutional exemption he must be an actual and not a constructive resident." In the opinion SMITH, C. J., combats the idea that the intent to return should be left to the jury, and says that "it is sufficient if in fact the debtor does change his residence and the effect of his acts cannot be defeated by his declaration that he did not so intend." In the present case, was the fugitive from justice, moving round from state to state for more than two years, not daring to return here, and only expressing the conditional intention to return, at some indefinite time, an *actual* or a *constructive* resident of this State? If the latter, upon the above unbroken line of authorities, he was not such a "resident" as could claim a homestead, or an exemption from attachment of his property, at the hands of the law which he was defy-

ing. *Fulton* v. *Roberts*, 113 N. C., 421, cites, as author-
ity, the above cases of *Munds* v. *Cassidey, Baker* v. *Legget,*
and *Lee* v. *Mosely.* As bearing upon the present case, it
is authority that the burden of showing the non-residence
of a party who has at one time been a resident of the State
is upon him who claims that the homesteader has become
a non-resident. That has no application here as the facts
are found by the referee, as above stated, and the intent
of the party to return, at some indefinite time, upon a
contingency, as SMITH, C. J., says above, was immaterial.
Our decisions have been uniform and have become " a rule
of property," and at a sale ordered by a court of compe-
tent jurisdiction, which order was based on these rulings,
the defendant has laid out his money. If he should ever
lose it under such circumstances, so long a line of decis-
ions should not be reversed for the benefit, and at the instance,
of an admitted fugitive from justice who even now has only
ventured to return to the State because by some means,
undisclosed to us, the original indictment against him has
been " buried."

It is not necessary to obtain the benefit of a homestead
exemption that the debtor should be a citizen. It is suffi-
cient if he is a resident of the State. But he must be a
resident, whether a citizen or not. Homestead and attach-
ment affect property rights, and are governed solely by res-
idence, not by citizenship. Citizenship, once acquired, can
be retained by constructive residence, plus the proper
intent. Not so with homestead and attachment, which
depend upon *actual* residence, which is a question of fact
upon the circumstances of each case. As citizenship (and
with it the right of suffrage and eligibility to office) can-
not be acquired by mere residence without an *animus
manendi*, it is right that it cannot be lost by mere non-
residence if there is the *animus revertendi.* But exemption

from attachment, which is seizure before judgment, and homestead, which is exemption from seizure after judgment, are conferred by residence alone, and must therefore be lost by non-residence. It is not always easy to draw the line between residence and non-residence, but we know that mere incidental absence, as on a visit or a journey, is not non-residence, and on the other hand we know it would do violence to both the legal and the ordinary use of the word to say that a man who flees the State to avoid being found by its officers, and who is skulking through other states to avoid extradition for more than two years, with no intention of returning till the criminal proceeding had been dropped, has during all those years been a resident of this State; or to say further that, because he was residing here all that time, the law will protect him from service of civil process by attachment of his property, and preserve for him the homestead which the Constitution confers upon no one unless he is a resident.