STATE ex rel., &c., JOHN H. HANNON v. JAMES M. GRIZZARD.

*Residence — Domicil — Animus Revertendi, proof of — Voting, place of—Judge's Charge—Jury, disagreement of, and power of court to keep together.*

1. Residence, as used in the clause of the constitution defining political rights, is synonymous with domicil, denoting a permanent dwelling place, to which the party, when absent, intends to return.

2. Upon the trial of an issue as to place of residence, it is competent for the party to prove his intention in respect to it.

3. A protracted residence abroad of one engaged in business and with no home in this state, is not consistent with the idea of a residence here.

4. The plaintiff was in the service of the federal government at Washington, having received an appointment as watchman under the treasury depart-

ment, but continued to pay poll-tax and vote in this state, and spent a part of each year at his home here; *Held*, that his constitutional residence remained unchanged, and that it was not error to refuse to charge the jury had not shown an actual *bona fide* residence in this state, he being that he a single man and sleeping and boarding in Washington during his stay there while acting as watchman. (Section eleven of the act of 1876-'77, ch. 275, does not undertake to declare what shall constitute a *residence*, as a qualification for voting, but rather to designate the place of voting).

5. Nor was it error to tell the jury that if they believed the testimony of the plaintiff, he had made out his case. This was not an expression of opinion on the proofs.

6. Nor to refuse to permit the jury to take the tax list into ther consultation room, without the consent of both parties.

7. Where a jury come into court and announce their inability to agree, the judge may, *in the exercise of his discretion, require them to retire again* and consider of their verdict, with an intimation that he will cause them to be kept together until the end of the term, unless they shall sooner agree.

(*Roberts* v. *Cannon*, 4 Dev. & Bat., 269; *State* v. *King*, 86 N. C., 603, cited and approved).

CIVIL ACTION in nature of *quo warranto* tried at Spring Term, 1883, of HALIFAX Superior Court, before *Philips, J.*

At a regular election held in November, 1882, in and for the county of Halifax, the relator was chosen by a majority of the votes cast to the office of register of deeds, and it was so declared by the county canvassers. At the meeting of the board of county commissioners next ensuing, he applied for admission to said office, offering to take the oath and give the bond prescribed by law. The board refused the application, upon the ground of the relator's want of the qualifications required by the constitution in that, he had not "resided in the state twelve months next preceding the election, and ninety days in the county." The board thereupon deeming the office vacant, proceeded to fill it by the appointment of the defendant, who took the oath, gave the bond and entered upon the execution of his official duties.

The present action, under the provisions of the Code, substituted in place of the former procedure by *quo warranto*, was

then instituted, and is prosecuted for the ejection of the incumbent, and in order to his own induction on complying with the requirements of law.

On the trial of the cause, the only issue submitted to the jury was in these words: "Was the relator a resident of this state and county on the 7th day of November, 1882, and had he been such resident for the twelve months preceding?" and the response, under the instructions of the court, was in the affirmative.

The relator examined on his own behalf, and the only witness introduced, testified in substance as follows: I was born on November 25th, 1850, in Halifax, and have always lived there. In 1875, I accepted the appointment of watchman under the treasury department of the United States at Washington City, before which time, except for a short interval, I had never been out of the state, and went there to perform its duties. I continued thereafter to pay my poll-tax in the county, and to vote there, as before. I so voted in 1876 and 1878, and proposed to vote in 1880, but the vote was challenged, and before the matter was decided, the time for giving in ballots by law expired, and the vote was not given. In 1882, I again voted, after a challenge. I have uniformly paid my poll-tax, and was never absent from the county for twelve months at one time, always spending here the one month's vacation from service annually allowed by the department.

The plaintiff's counsel proposed to inquire whether the witness, in accepting employment at Washington, or afterwards, intended to abandon his home in this state. To this the defendant made objection, which was overruled and the witness permitted to say: "I did not. I considered North Carolina my home. I have never offered to vote or paid poll-tax elsewhere. The house in Halifax occupied by my step-mother was provided by me for her, before and since my father's death. It is rented, but I own real estate in the county."

The cross-examination developed the foregoing testimony more in detail, but without any substantial repugnance: and the

witness added that from July to October 14, 1875, he was employed in the navy-yard near Norfolk, and proceeded thence to Washington, where he remained in the government service, interrupted by occasional returns to Halifax, as before shown, until the last of December, 1882, when his employment ceased, and early in the next month he returned to Halifax.

The defendant asked an instruction to the effect that the plaintiff had not shown an actual *bona fide* residence in the state, and that being a single man, sleeping and boarding at Washington, during his stay and while acting as watchman, he was not meanwhile a resident of the state within the meaning of the constitution, and that, accepting his statement as correct, the jury should respond to the issue in the negative. This instruction was denied, and His Honor proceeded to charge thus:

A person's residence is his place of domicil; the place where his habitation is fixed, without any intention of removing therefrom. Residence, as used in the constitution, means a domicil in the county and state. As long as a party has the *animus revertendi*, no length of residence elsewhere will change the domicil. In order to such change there must not only be an act, but a concurrent intention to make it. If the jury believe that the relator was born in Halifax in 1850, and there had his fixed abode until 1875, when he accepted service under the department at Washington, and went there to enter upon it, and remained for the period mentioned, returning once or twice a year on leave of absence, voted and paid taxes to the county and town authorities until January, 1883 (erroneously written, as we suppose, 1882), when he came back to the county, where he has since remained, with no intention of abandoning his home in Halifax or making a new home in Washington, then the issue should be found in favor of the relator.

To the refusal of the court to give the instructions asked, and to those given instead, the defendant excepts.

The jury retired on Tuesday night of the first week of the term to consider their verdict, and twice came into court for further directions, and once to announce their disagreement.

Again, on Thursday, they came into court to announce their inability to agree upon a finding and to ask for a discharge, one of the jurors stating that he had been sick and feeble and the jury were in an uncomfortable room, but that he could stand it as long as anybody.  Thereupon His Honor remarked: "I do not know what is the cause of your failure to find a verdict in this case, nor do I care to know.  But if your failure is a wilful disregard of my instructions, you ought not to ask any favor of the court.  I will state that the court expires by limitation on Saturday night week at 12 o'clock.  I directed the sheriff to feed you and to move you to a room where you can have comfortable fire.  He has done so.  I will still do anything in my power to render you comfortable."

One of the jurors stated that the jury wanted to see the tax list, whereupon a discussion sprung up between the opposing counsel, the plaintiff's counsel consenting and the defendant's counsel objecting, to the papers being carried out to the jury-room, and thereupon the court interposed and repressed the altercation, remarking that as the registration books were only offered in evidence and not read or shown to the jury, he should not now let the jury have them, unless with consent of counsel, and added: "If the jury believed the testimony of the relator, he has made out his case."  To this ruling and this part of the charge the defendant also excepts.

From the judgment rendered on the verdict the defendant appeals.

*Messrs. Mullen & Moore, Day & Zollicoffer* and *J. E. O'Hara,* for plaintiff.

*Messrs. Walter Clark* and *R. O. Burton, Jr.,* for defendant.

SMITH, C. J., after stating the above.  The essential question presented upon the record is as to the proper interpretation of the words used in the constitution, in the clause defining the qualification required of electors and persons holding office. Art. VI, §§1 and 4.

Section 1 declares that "every male person born in the United States and every male person who has been naturalized, twenty-one years old or upwards, who *shall have resided in the state twelve months next preceding the election and ninety days in the county* in which he offers to vote, shall be deemed an elector."

Section 4 declares that "every voter, except as hereinafter provided, shall be eligible to office." The exceptions and other qualifications and restrictions elsewhere contained in the constitution, are not material in the present inquiry.

Residence, as the word is used in this section in defining political rights, is, in our opinion, essentially synonymous with domicil, denoting a permanent as distinguished from a temporary dwelling-place. There may be a residence for a specific purpose, as at summer or winter resorts, or to acquire an education, or some art or skill in which the *animus revertendi* accompanies the whole period of absence, and this is consistent with the retention of the original and permanent home, with all its incidental privileges and rights. Domicil is a legal word and differs in one respect, and perhaps in others, in that, it is never lost until a new one is acquired, while a person may cease to reside in one place and have no fixed habitation elsewhere.

This rule as to domicil is based upon the necessity of having some place by whose laws in case of death the personal estate must be administered. In defining political immunities, however, both terms indicate a permanent and retained home.

Thus, remarks GASTON, J. "By a residence in the county, the constitution intends a domicil in that county. This requisition is not satisfied by a visit to the county, whether for a longer or a shorter term, if *the stay there be for a temporary purpose* and with the design of leaving the county when that purpose is accomplished." *Roberts* v. *Cannon*, 4 Dev. & Bat., 269.

Domicil is defined by Mr. Justice STORY, as "the place where a person lives or has his home," that is, as he adds, where one has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. Conf. Laws, §41.

HANNON v. GRIZZARD.

The present constitution, in requiring a previous residence in the state and county as a condition in conferring the elective franchise, did not intend to deprive its own citizens of their privileges, as such, when they left the state and resided temporarily beyond its limits, with a constant purpose to retain their homes and return to them when the objects which called them away were attained. This clause meets more especially the case of incoming persons, who are not permitted to exercise political rights until after they have been in the state and county for the prescribed period.

Nor has the section of the act of 1876–'77, ch. 275, regulating elections, any application to the present inquiry. Aside from questions of its compatibility with the constitution, if capable of bearing the construction given it in the argument of defendant's counsel, section eleven does not undertake to declare what shall constitute a residence, as a qualification for voting so much as to designate the precinct, ward or place of voting in which a qualified elector is to deposit his ballot, and this to prevent fraudulent voting.

Applying then the term used in the constitution as indicating a residence, permanent and fixed, to the facts testified to by the relator, the court was fully warranted in saying to the jury that if they believed the witness (the plaintiff) he had made out his case.

We are not prepared to say that a protracted residence abroad of one engaged in the ordinary business of life, and with no home in the state, is consistent with the idea of a residence here, and can be controlled in its legal consequences by a hidden purpose in the mind not to abandon his citizenship; but, upon the facts of this case, we think the relator's constitutional residence remains unchanged, and none of his political rights as a citizen here have been lost by his employment and temporary residence at Washington. Not only does the relator swear to his continuous intention during his absence, but his conduct in paying his taxes and casting his votes, and in frequent returns to the home

of his step-mother as to his own, is consistently in support of that intention.

We discover no error in permitting the relator to testify to his intent, for it is a material element in the inquiry as to his habitation and home. *State* v. *King*, 86 N. C., 603.

Nor is there any ground for complaint in the refusal to give the directions requested by the defendant's counsel.

The only remaining exception, necessary to notice, is that taken to the declaration of the court about keeping the jurors together until they agreed upon a verdict, or until the expiration of the term; and to the last instruction as intimating an opinion upon the proofs, in violation of the act of 1796.

The conduct of judicial proceedings must be left largely to the discretion of the presiding judge, and it was certainly proper to impress upon the jurors their duty in endeavoring to come to an agreement after a clear and distinct exposition of the law as to what constitutes a residence, as a constitutional prerequisite to filling a public office. The facts testified to were few and simple, and while the intimation of confinement together till a conclusion was reached may have exerted some coercive influence over the minds of the jurors, he was but exercising a discretion reposed in him by law with a view to the ending of litigation. He could refuse to discharge the jury as long as, in his opinion, there was a reasonable ground for expecting a verdict, and this is about the import of his words; and this was accompanied by the assurance that they should be comfortably provided for in the meantime.

Nor does the final instruction convey any opinion as to the weight of the evidence or the facts found under the inhibition of the act. The instruction was entirely appropriate that if the relator's statements were believed, leaving the credit due to be given by the jury, the relator's claim had been made out, and the response to the issue should be in his favor. The case of *Nash* v. *Morton*, 3 Jones, 3, is dissimilar, and not an authority for setting aside the verdict upon this ground.

There is no error, and the judgment below must be affirmed.

Upon this decision being made known to the county commissioners, we assume no obstacle will be interposed to the plaintiff's admission to the vacated office.

No error.                                    Affirmed.