This is an action brought to try the title to the office of Sheriff of Forsyth. At the election held in said county in November, 1910, D. A. Jones and George W. Flynt were opposing candidates for said office.
The board of county canvassers declared said Flynt elected by twelve votes, and he was accordingly inducted into office.
Summons was issued returnable to February Term, 1911, of the Superior Court of said county, and complaint and answer were thereafter duly filed. The case turned upon the number of votes cast for (89) the relator and for defendant, respectively, in Broadbay Township and in Middle Fork Precinct, No. 1, in said county.
Relator alleged that in Broadbay Township he received 443 votes, and his opponent 214 votes. Defendant claimed that in said township relator received 433 votes only, while he received 214.
In Middle Fork (Precinct No. 1) relator alleged that he received 196 votes and his opponent 49 votes. Defendant claimed that at said precinct relator received only 186 votes and that he received 49.
The board of county canvassers accepted the contention of defendant as to both these precincts and declared him to have been elected sheriff by a majority of 12 votes.
At May Term, 1911, by consent of parties, the case was referred to F. C. Robbins, Esq. The order of reference is as follows:
"This cause coming on to be heard before the undersigned judge of the Superior Court: it is now, by consent of parties, ordered that the said cause be and the same is hereby referred to F. C. Robbins, who shall, as soon as may be, proceed to hear and determine said cause, and who shall make and file herein his findings of fact and conclusions of law separately, his findings of fact to be final and the conclusions of law to be subject to review upon exception and appeal as provided by law. *Page 73 
"It is, by consent of the parties, further ordered that said referee shall consider and determine only the number of votes actually cast for the office of sheriff of said county in the township of Middle Fork, Precinct No. 1, and the township of Broadbay, in said county, for the relator and for the defendant, respectively, at the election of 1910, it being agreed that outside of said precincts in said county, at said election, there were actually cast for said relator 2,305 and for said defendant 2,673 votes for said office, as appears from the returns from the precincts, and that all other questions of law and fact raised by the pleadings are waived."
It was in evidence that there were four papers before the county board of canvassers, purporting to be returns from Broadbay (90) Township, all of which were signed by the judges of election and the registrar, and they are referred to as Exhibits Nos. 10, 2, 3, and 4.
In Exhibit No. 10, the vote of the relator is 443, in writing and in figures.
In Exhibits Nos. 2 and 3, his vote is 433, in figures and in writing.
In Exhibit No. 4, his vote is 443 in writing, and 433 in figures.
Exhibits Nos. 2 and 3 are referred to in the evidence as the long sheets, and are the official papers sent out to the election officers upon which to make their returns. One of these was returned to the board of canvassers and the other to the county board of elections.
Exhibits Nos. 10 and 4 are referred to as the short sheets, which were not sent to the election officers on which to make returns. J. F. Reynolds, a supporter of the relator, filled out Exhibits Nos. 10, 3, and 4.
There was evidence on the part of the relator tending to prove that Exhibit No. 10 was returned to the county board of canvassers, and evidence on the part of the defendant that it was not seen by the board until the day it met to canvass the returns, and that the said Reynolds then took it from his pocket.
There was also evidence that on the night of the election the votes were called out and counted, and the result marked on tally-sheets made by George Clodfelter and others, and that the number of votes were marked on tickets from the tally-sheets, and that 443 votes were cast for the relator.
The tally-sheets were not in evidence, and the defendant introduced evidence tending to prove that they were left on the table where the election was held, at the request of said Reynolds, and that he said they had been destroyed, and also that Reynolds and others were drinking on the night of the election, and that there was some confusion; all of which was denied by Reynolds. *Page 74 
(91) George Clodfelter, who kept a tally-sheet, testified, among other things, that after the vote for the relator and the defendant was counted, some one marked the number of votes on a ticket, and that he took the ticket and went to a store nearby to phone the result to Winston; that when he reached the store it was dark and he could not see, and he handed the ticket to Luther Snyder, who called out the number of votes from the ticket, and he gave the vote over the phone to Winston.
He also testified that he did not remember the figures on the ticket, nor the vote given by him over the phone; and Luther Snyder was not introduced as a witness.
The relator offered to prove by two witnesses that Snyder called out 443 votes for the relator, and that Clodfelter phoned that number to Winston. This evidence was excluded, and the relator excepted.
The referee found that the relator received 433 votes in Broadbay Township, and it is conceded that if this finding stands, the defendant was elected by a majority of two votes, and if he received 443 votes, the relator was elected by a majority of eight votes.
The referee states his impression of the evidence and his findings are as follows:
"Having considered and weighed all of the evidence with care, I here state as briefly as possible some of the points in it which have led me to the conclusion reached.
"Plaintiff's Exhibit 10, showing 443 votes for Mr. Jones, written and in figures, and 214 for Mr. Flynt, written and in figures, is signed and certified by the election officers, and Mr. J. F. Reynolds testifies that he made it out and that it was the first one, and put it in an envelope and Mr. Rominger took it; and Mr. Glen Hoover, one of the judges, testifies that after they got through signing returns, Mr. Rominger took charge of them; Sidney Teague, the other judge, testifies that he don't know whether Exhibit 10 was given to Rominger or not. Mr. Rominger brought the sealed envelope of the county vote to the canvassing board, and Mr. Bynum, secretary, testifies that he took out of that envelope defendant's Exhibit 2; that there was no other in it, and that (92) Exhibit 10 was not in it, and Mr. Foy testifies that he saw Mr. Bynum take Exhibit 2 out of the envelope.
"Reynolds further testifies, on his direct examination, that he made out but two returns, plaintiff's Exhibit 10 and defendant's Exhibit 3, and perhaps one other for Congress; but on cross-examination, when confronted with defendant's Exhibit 4, he admits that he filled out that also. He also testifies that while making out Exhibit 10 he did not say `It is easy to think one thing and write another,' in which he is *Page 75 
contradicted by Sidney M. Teague, one of the judges; and Mr. Langston also testifies that he thinks Mr. Reynolds made that remark.
"Also, when he came in before the canvassing board, he testifies that he walked up to the table, and one of the board, he thinks, passed up to him Exhibit 10, and he said, `There is nothing wrong about this', and he also denies pulling out of his pocket Exhibit 10; whereas several witnesses for Mr. Jones, to wit, May, Tavis, Savage, and Boyles, and several witnesses for Mr. Flynt, to wit, Foy, Shamel, Conrad, Goode, Hinshaw, and others, all testify that he first got hold of the regular return, defendant's Exhibit 2, and said, `It is not right,' or `It is wrong,' or some such words, and Mr. Beroth and Mr. Stafford testify that he did not get it (Exhibit 10) off the table nor was it handed to him from the table, but that he pulled it out of his pocket — Mr. Stafford saying, out of his left breast coat pocket, and Mr. Hinshaw testifies that when Mr. Reynolds got halfway to the table, on coming in, he saw the paper in his (Reynolds') hand; and Mr. Crouse testifies that that paper was not on the table prior to that time. This, with other evidence on that point, shows, by the greater weight of evidence, that Exhibit 10 was brought in before the board by Mr. Reynolds.
"In filling out defendant's Exhibit 3, he testifies he did not say, `Now, Doc (M. E. Teague), ain't that right?' and `Is that right?' but Mr. Langston testifies that he did say it.
"It seems to me a matter of some weight, if not of considerable weight, that Mr. Reynolds suggested that the tally-sheets, especially that of Mr. Clodfelter, be left on the table at the counting of the votes on the night of the election, as Mr. Clodfelter testifies that he did; and (93) again, when it was suggested before the canvassing board, in the dispute about the vote at broadbay, that the tally-sheets be sent for, Mr. Reynolds said they were destroyed, so Mr. Foy testifies, and Mr. Bynum says he thinks Mr. Reynolds said they were destroyed. Basing his contention that Mr. Jones received 443 votes upon his inspection of that tally-sheet, and several of his party friends also pointing to that tally-sheet as the source of their entries on tickets, it is little short of amazing that Mr. Reynolds did not see to it that that tally-sheet was safely preserved.
"He is also contradicted about drinking liquor that night, and about asking some gentlemen to go by his house for Wilkes County corn, and on other minor points which appear in the evidence, but which I do not stop to mention.
"It is also very significant that, after admitting that he took great interest in the election, and while contending that 443 for Mr. Jones is right because he had so written it that night from Mr. George Clodfelter's tally-sheet, as he says, Mr. Reynolds then wrote out defendant's Exhibit *Page 76 
3, which shows for Mr. Jones 433, written and in figures, and for Mr. Flynt 214, written and in figures, and then another, defendant's Exhibit 4, which shows for Mr. Jones 443 written and 433 in figures.
"It seems to me that these contradictions and this sort of action can only be accounted for on the ground that Mr. Reynolds' memory is treacherous, and on the further ground that, being anxious for Mr. Jones' election, under the impulse of partisan zeal to run his vote up, he somehow or other got these figures, 443, into his head, and under the force of the same zeal now wishes to maintain them.
"A number of witnesses on both sides testify that Mr. Reynolds claimed that Mr. Rominger knew how the vote was and insisted on his being examined before the board, and yet it is significant that Mr. Rominger, after being sworn as a witness for Mr. Jones, was not examined, although he was one of the election officers who, Mr. Reynolds claimed, knew all about how the vote was and whether Mr. Jones received 443 votes; and it is also noticeable that neither of the (94) judges of election, Mr. Hoover and Mr. Sidney Teague, testified as to what the vote for Mr. Jones was, although both were examined for Mr. Jones.
"These two judges testify that they heard no declaration of the result of the vote when the counting was completed. The statute says, `The counting of the votes shall be continued without adjournment until completed and the result thereof declared'; but I have not been able to find any decision defining the meaning and purpose of the words, `the result thereof declared.' Whatever its meaning, I do not think it can mean simply a declaration made by one tally-man to another, as Mr. Clodfelter says he did to Mr. Teague alone, as they added up the tally-sheets, although it may have been overheard by three or four men standing around, Mr. Reynolds, Mr. Charlie Teague, Mr. Sides, and Mr. Stewart, as appears from their testimony.
"Andrew Stewart (Ex. 14), Cicero Jones (Ex. 15), S. A. Sides (Ex. 16), and J. F. Reynolds (Ex. 17), all testify that they saw the tally-sheet of Mr. George Clodfelter, as he ran up the vote, and it showed 443 for Mr. Jones, and that they severally took it down on said exhibits. While it seems to me that it would be competent evidence for one present at the counting and figuring by the judges and who saw and heard what they said at the time of the counting and figuring and saw what they actually did, to testify to it, yet it will be observed that the testimony clustering around said exhibits and the entries on the tickets are based on what Mr. Clodfelter, a tally-man, said and did, and, in the absence of the tally-sheet, I am in grave doubt whether such evidence is competent at all, and if competent, its weight is quite another matter, and declarations by bystanders and excited partisans, and entries made by *Page 77 
them on tickets under such circumstances, are, I think, entitled to but little weight. W. A. Hege testifies that he got the vote from Mr. Clodfelter's ticket, 443, and it seems to me that this had less weight than the ones last above mentioned. What J. A. Nicholson testifies he heard George Clodfelter phone, and what Charlie Clodfelter heard him say in the store, is excluded as hearsay. Mr. Cicero Jones testifies that, independent of the ticket, he remembers the vote was 443 for (95) Jones and 214 for Flynt, but how he got his information does not appear.
"Mr. M. E. Teague, the other tally-man, and supporter of Mr. Jones, and who must have known what his own tally-sheet showed, filled out the official returns (defendant's Exhibit 2) sent in to the county board of canvassers, signed and certified by election officials, showing for Mr. Jones 433 votes, written and in figures, and for Mr. Flynt 214 votes, written and in figures; and Mr. Reynolds filled out defendant's Exhibit 3, showing for Mr. Jones 433 votes, written and in figures, and for Mr. Flynt 214 votes, written and in figures; and both of these, Exhibits 2 and 3, were filled out and signed some hours after the entries on the tickets as aforesaid.
"The sworn election officers, when they signed and certified the official return, defendant's Exhibit 2, notwithstanding some carelessness in signing and certifying too many papers, must have known and seen to it that they were sending up a correct return of the votes cast for Mr. Jones and Mr. Flynt, to the county board of canvassers, at this precinct, Broadbay, which return shows for Mr. Jones 433 votes, written and in figures, and for Mr. Flynt 214 votes, written and in figures.
"After a careful consideration and weighing of all the evidence, that particularly specified and all the other offered by Mr. Jones, I am forced to the conclusion that he has failed, by a preponderance of the evidence, to overthrow the prima facie case made in favor of Mr. Flynt on said return passed upon by the canvassing board.
"I therefore find as a fact that D. A. Jones, relator of plaintiff, received four hundred and thirty-three (433) votes, and that George W. Flynt, defendant, received two hundred and fourteen (214) votes, at Broadbay Precinct."
The referee sustained the contention of the relator as to Middle Fork Precinct, No. 1.
The judge confirmed the report of the referee, and rendered judgment in behalf of the defendant, and the relator excepted and appealed.
The assignments of error relied on in applicant's brief are:
(1) That the referee held that the decision of the board of canvassers made out a prima facie case in favor of the defendant, (96) *Page 78 
and that the burden of proof was on the relator, and that he had not overcome the prima facie case by a preponderance of the evidence.
(2) That the referee held that Exhibit No. 2 was the original return, and, when passed on by the board of canvassers, made out a prima facie case for the defendant.
(3) That the referee failed to state what the facts were as to counting the votes and declaring the result on the night of the election.
(4) That the referee gave no weight to the evidence of certain witnesses, who are named.
(5) That the referee held that the evidence of certain witnesses, who are named, was entitled to but little weight.
(6) That the referee admitted certain evidence offered by the relator, and said he had grave doubts as to its competency.
(7) That the referee said he thought the evidence of one witness introduced by the relator was entitled to less weight than the evidence of another of his witnesses.
(8) That there was no more evidence to show that Exhibit No. 2 was the original return than that Exhibits Nos. 10, 3, and 4 were such.
(9) That as there were four returns, and they were not alike, there could be no prima facie case in behalf of the defendant.
(10) That the referee excluded the evidence as to what occurred when George Clodfelter phoned to Winston.
(11) That the referee found that the relator received 433 votes in Broadbay Township.
(12) That the referee declared that the defendant had been elected sheriff.
after stating the case. The controversy between the parties is such that a full statement of facts is necessary, and when this is considered, in connection with the assignment of error, it demonstrates that the issue in dispute is one of fact, and not of law, and that this has been decided against the relator by the tribunal selected by the plaintiff and the defendant.
The board of canvassers were acting under a statute (Revisal, sec. 4356) which made it their duty "to judicially determine the result of the election," and having found as a fact that the relator received 433 votes in Broadbay, and that the defendant was duly elected, the referee *Page 79 
properly held that this made out a prima facie case for the defendant.Bynum v. Commissioners, 101 N.C. 412; Gatling v. Boone, 98 N.C. 573;Wallace v. Salisbury, 147 N.C. 58.
In any event, however, the burden of proof was on the relator, because he commenced the action to recover the office of sheriff, and he alleges that the defendant is in possession of the office and that he, the relator, received a majority of the votes cast, and having made these allegations, the burden was on him to prove them.
The statute (Revisal, sec. 4348) seems to contemplate but one original return, and it was as competent for the referee to determine which was the original, when four exhibits were in evidence, each of which might be claimed to be the original, as it was for him to determine any other fact, and when identified by the finding of the referee, the original was primafacie correct.
In speaking of an election return, in Roberts v. Calvert, 98 N.C. 585, the Court says: "It was not conclusive, but it was official and strong evidence; it appearing to be regular, proved the pertinent facts stated in it prima facie. It put the burden on him who alleged the contrary, to prove it clearly."
It was not essential to the integrity of the report for the referee to find the facts as to what occurred when the votes were counted on the night of the election, as these incidents were merely evidentiary on the principal issue of the number of votes cast for the relator and the defendant. The referee was acting as a jury, with power to find the facts, and it was his duty to weigh the evidence, and to determine on (98) which side it preponderated, and to pass on the credibility of witnesses.
In order to find the ultimate fact as to the number of votes cast it was necessary and proper for him to settle in his own mind whether the evidence in behalf of the relator preponderated; whether the evidence of certain witnesses was entitled to no weight; whether the evidence of other witnesses was entitled to but little weight; whether the evidence of one witness was entitled to less weight than that of another; and the fact that he told what he thought, cannot affect the report, nor is it material that he had grave doubts as to the competency of certain evidence which he admitted and considered.
The evidence as to what occurred when George Clodfelter phoned to Winston was properly excluded. George Clodfelter kept a tally-sheet, and after the votes were counted some one marked the votes for sheriff on a ticket, and he took the ticket to a store to phone the result to Winston. It was so dark in the store that he could not read the figures on the ticket, and he handed it to Luther Snyder, who called out some figures, and Clodfelter phoned to Winston. *Page 80 
Luther Snyder was not a witness and there was no evidence that he called out the figures as they appeared on the ticket, and George Clodfelter testified that he did not remember what the figures were on the ticket, nor the figures called out or phoned by him.
The relator offered to prove the figures called out by Snyder and phoned by Clodfelter, and this was excluded.
The case of Propst v. Mathis, 115 N.C. 526, seems to be directly in point. In that case the plaintiff relied on a will as a part of his title, of date 1853. He offered evidence of the destruction of the records in the clerk's office of Burke County, in 1865, and then offered to prove that he went to the clerk's office in 1853, and that the clerk read the will to him from the record, and its contents, and the court held this evidence inadmissible.
The case of Hart v. R. R., 144 N.C. 91, relied on by the (99) relator, is clearly distinguished, because in that case the party on whose statements the paper in controversy was made up was examined as a witness, and testified that his statements were correct, and the decision rests upon the principle that, "Where a witness testifies that he has truly stated to a third person, of his own knowledge, a fact which he has since forgotten, the testimony of such third party as to what the statement was in competent."
The remaining assignments are to the finding as to the number of votes cast for the relator, which we cannot review, and to the conclusion that the defendant was duly elected, which follows as a matter of course from the facts found.
No error.