STATE ON RELATION OF F. G. GOWER v. C. W. CARTER.

(Filed 6 June, 1928.)

**1. Elections—Qualification of Voters—Residence.**

In order to acquire a residence for the purpose of exercising the right to vote in a given locality, the "residence" must be of a permanent, and not of a temporary character, corresponding with the word domicile.

**2. Same—Evidence of Residence.**

Those who are teachers in a locality, and their right to vote therein is made to depend upon whether they were residents therein only for the scholastic year. A question is incompetent that asks them of their intention to make the locality their legal residence, since the answer involves a question of law as to what constitutes a sufficient legal residence to qualify them to vote.

**3. Trial—Instructions—Request for Instructions.**

Correct prayers for instructions, refused by the court, are not considered as reversible error when they are substantially given in the general charge.

APPEAL by defendant from *Cranmer, J.,* at November Special Term, 1927, of JOHNSTON. No error.

*Parker & Martin for plaintiff.*
*W. H. Lyon and J. W. Bailey for defendant.*

ADAMS, J. This is an action in the nature of *quo warranto* to try the title to the office of mayor of the town of Clayton. The case was before the Court at the Fall Term, 1927, on appeal from a judgment of nonsuit, and is reported in 194 N. C., 293. On the second trial the following issue was submitted to the jury and answered in the affirmative: "Was F. G. Gower duly elected mayor of the town of Clayton on the third day of May, 1927, as alleged in the complaint?" Judgment was given for the plaintiff, and the defendant appealed.

It is admitted that the official returns show that 238 votes were cast for the plaintiff and 239 for the defendant. The plaintiff alleges, however, that the defendant received only 224 legal votes. This allegation is denied by the defendant, who says that several votes were wrongfully and illegally cast for the plaintiff, and that the defendant was duly elected to the contested office. It is necessary to examine these contentions in the light of the evidence.

The plaintiff contends that sixteen persons illegally voted for the defendant: Charles Hill, Jr., Joseph Romanos, Mrs. Forbes, and Misses Sitterson, McCook, Baugh, Baker, Pierce, Hampton, Noble, Baxley, Askew, Sparger, Herring, Banks, and Foy. It was admitted on the trial,

as we understand from instructions given the jury, that Mrs. Forbes was under 21 years of age and that Romanos was a citizen of Syria, not of North Carolina, at the time they voted. They were therefore disqualified. C. S., 2654, 5936, 5937. Hill testified that he had lived in Clayton only three months before the election and that the defendant registered his name. For this reason he was not a qualified elector. C. S., 2654, 5937. The others whose names are given were teachers in the schools of Clayton. There was evidence tending to show that they remained there while the schools were in session and in vacation returned to their respective homes. The contested question is whether they were qualified to vote in the election for mayor.

The Constitution provides that every elector shall reside in the State of North Carolina for one year and in the precinct, ward, or other election district in which he offers to vote four months next preceding the election. Art. VI, sec. 2. In *Hannon v. Grizzard,* 89 N. C., 115, it is said: "Residence, as the word is used in this section in defining political rights, is, in our opinion, essentially synonymous with domicile, denoting a permanent as distinguished from a temporary dwelling place. There may be a residence for a specific purpose, as at summer or winter resorts, or to acquire an education, or some art or skill in which the *animus revertendi* accompanies the whole period of absence, and this is consistent with the retention of the original and permanent home, with all its incidental privileges and rights. Domicile is a legal word and differs in one respect, and perhaps in others, in that, it is never lost until a new one is acquired, while a person may cease to reside in one place and have no fixed habitation elsewhere." And in *Reynolds v. Cotton Mills,* 177 N. C., 412: "Domicile is of three sorts—domicile by birth or of origin, by choice, and by operation of law. The first is the common case of the place of birth; the second is that which is voluntarily acquired by a party; the last is consequential, as that of the wife arising from marriage. It is universally held, and clearly so by this Court, that in order to constitute a domicile by choice, two essential things must concur, which are 'residence' and 'intent' to remain at the place for an indefinite period."

Obviously for the purpose of meeting this requirement the defendant inquired of several of the teachers who had testified whether it was their purpose to make Clayton their legal residence when they went there and when they voted. The plaintiff's objection to those questions was sustained and the defendant excepted. Each witness would have given an affirmative answer. In this ruling there was no error. A legal residence, under the cases cited, was prerequisite to a right to vote. But the question was framed in such way as to involve matters of law as well as of fact and to leave with each witness the implied right to determine for

herself what elements are essential to the correct definition of a legal residence. Each one might have concluded that her presence in Clayton during the school terms was sufficient to constitute a legal residence for the purpose of voting without an intent to remain there at any other time or for any longer period, or each one may have differed from the others in her estimate and understanding of the phrase. In the questions no rule was laid down or suggested as a basis for any fixed uniformity in giving an answer. Exceptions, 4, 11, 13, 14, 18-20, 22, 27, 29-31, 33 and 42 are overruled. Exceptions 16, 17, 32, 36, and 37 set forth no sufficient cause for a new trial; and as to those numbered 35, 38, and 39 it may be said that if the evidence had been admitted it could not, upon undisputed facts, reasonably have become a factor in changing the result.

The defendant requested the following instruction: "Domicile, or legal residence, is to be determined by the intent of the person under the facts and circumstances. The statute prescribes the time element necessary to qualify a voter in the matter of actual residence; but the test of domicile or legal residence is the intention of the person."

We think this prayer was given, not in the exact words, but at least in substance. After stating the time limit of the elector's residence as prescribed by statute and the requisites of registration, the trial court defined "citizen," "residence," and "domicile," and stressed the present intention as an essential element in the selection of one's domicile or permanent home. This was repeated and the intention which marks the distinction between domicile and residence was clearly pointed out. That a requested instruction need not literally be given needs no citation of authority. We find no reversible error.

No error.