## STATE v. C. W. SNEED.

(Filed 6 November, 1929.)

**Criminal Law D a—In this case held abandonment was in this State and State court has jurisdiction.**

> The constructive domicile of the wife is that of her husband, and where he has resided in another State and has left her there, and where for business or other reasonable purposes he has come to this State and made his domicile here, and she has followed him and he has then abandoned her and ceased to contribute to her support and that of his child born to them in lawful wedlock, the abandonment occurs in this State and is within the jurisdiction of the courts of this State and subject to the provisions of our statute making it a misdemeanor. C. S., 4447.

APPEAL by defendant from *Barnhill, J.,* and a jury, at May Criminal Term, 1929, of DURHAM. No error.

This is a criminal action against the defendant for abandonment under C. S., 4447.

Mrs. C. W. Sneed testified in part: That she married the defendant 7 May, 1927, in DeLand, Florida; that her home had been in Daytona, Florida. She and her husband lived in Daytona until 11 July, 1927, and went to Atlanta, Ga. On 1 January, 1928, in Atlanta, Ga., there was born to the union a boy. About three weeks after the birth of their child her husband sent her back to Daytona, where she came from, until he could find work; that she lived there in "the small garage apartment of her mother's home." He was to go to Durham to find work and promised to send for her. She frequently heard from him while in Durham, but he did not send for her. She went to Durham on 8 June, 1928, as she had nowhere else to stay, and he was her husband and she thought her place was with him. She stayed in Durham five days at the Washington Duke Hotel, where he registered her, and saw her husband while there, and he paid her hotel bill, $15. He then took her and their child to Raleigh, and at the station in Raleigh he gave her $30 and sent her back. Said he didn't want to live with her any longer and sent her back; that he had not told any one he was married, and was out for a *"big time."* She came back to Durham about 14 September, but did not write she was coming. She went to the home of her husband in

West Durham with her grip, but the defendant refused to let her stay there. He had contributed nothing towards her support for a week before she swore out the warrant. He gave her $154 from January to June, and $100 from June to September. She received a card from him, mailed at Winchester, Va. The message on the card was *"Drunk again, still traveling, having a big time. Bill."* The card was sent to Daytona Beach. She was there with her child at the time. The last time defendant contributed anything to her support was 8 September, 1928. He had not contributed anything to her support or to the child's support since 8 September, 1928. She came to Durham after she received the last remittance. Defendant did not give her anything the last time she was in Durham. The trial in recorder's court was on 19 September. She was working at a salary of $15 a week. She had no other means of support for herself and child. At the time she was making $15 a week she had to employ a nurse to look after the child; she had to pay her $10 a week.

The defendant introduced no evidence.

The jury rendered a verdict of guilty. Judgment was rendered in the court below on the verdict and the defendant appealed to the Supreme Court, assigning error.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*McLendon & Hedrick for defendant.*

CLARKSON, J. The defendant assigns error:

The refusal of the court below to allow the defendant's motion of nonsuit upon the ground that if any offense was committed it was not committed in the State of North Carolina, and, therefore, not within the jurisdiction of this Court.

We do not think the assignment of error can be sustained.

The law pertinent, C. S., 4447, in part is as follows: "If any husband shall wilfully abandon his wife without providing adequate support for such wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor."

There is no assignment of error to the charge of the court below. The major contention made by defendant was to the effect that if any offense was committed, it was not committed in the State of North Carolina; therefore, the court had no jurisdiction.

The court charged fully the elements of the crime that the State had to establish beyond a reasonable doubt before the defendant could be convicted.

"There are two elements of this offense—wilful abandonment and failure to support—and both must be alleged and proved. *S. v. Toney,*

162 N. C., 635; *S. v. May,* 132 N. C., 1021; *S. v. Smith,* 164 N. C., 476; *S. v. Hopkins,* 130 N. C., 647. Abandonment is not a continuing offense, day by day *(S. v. Hannon,* 168 N. C., 215), but the duty to support the wife is a continuing one during the existence of the marital union, and must be performed unless there is some legal excuse for nonperformance of it, and when defendant withdrew his support from his wife he became indictable under the statute, even though he lived in another State and had kept his promise and supported his wife for several years. His last delinquency must fix the beginning of his criminal liability." *S. v. Beam,* 181 N. C., 599; *S. v. Yelverton,* 196 N. C., 64.

It was contended by the State that the defendant wilfully abandoned his wife and child without providing adequate support in Durham, N. C. The defendant contended that if he did wilfully abandon his wife and child without providing adequate support that this took place in Georgia and he committed no offense in North Carolina. These contentions were fully set forth in the charge by the court below, and the court charged: "It is a question of fact for you to determine upon the evidence."

· In 30 C. J., at page 511, part section 18, we find the following: "It is the husband's right to choose and establish the matrimonial domicile, and in general it is the duty of the wife to submit to the determination of the husband and to follow him to the domicile of his choice. On a change of domicile by the husband, it is the duty of the wife to follow him to the new domicile. The right of the husband to determine the domicile must be reasonable and not arbitrarily exercised. In exercising the right, the husband should have due regard for the comfort, health, welfare, safety and peace of mind of the wife." 13 R. C. L., at p. 989, sec. 9.

"Where a husband changes his residence from a consideration of convenience or business advantage it is, generally speaking, the duty of his wife to accompany him." *Monahan v. Auman,* 39 Pa. Super., 150, 153; 30 C. J., *supra.*

The record shows that the husband's domicile was in Durham. *In re Ellis,* 187 N. C., 840; *Gower v. Carter,* 194 N. C., 293, 195 N. C., 697. In *Hicks v. Skinner,* 71 N. C., at p. 543, it is said: "It must be held, however, that upon marriage the domicile of the wife by construction of law, became that of the husband."

Under the facts and circumstances of this case, we think that there was sufficient evidence to be submitted to the jury that the abandonment was wilful, and that there was a failure to provide adequate support, and both took place in Durham, N. C. We find

No error.