## STATE Ex Rel. OWENS v. CHAPLIN.

(Filed 4 June, 1948.)

**1. Quo Warranto § 2—**

Admissions by relator that each challenged elector was duly registered and that his absentee ballot was in proper form raise a presumption of correctness, and the burden is on relator to show the contrary.

**2. Same: Evidence § 17—**

The relator is bound by the testimony of electors called by relator as witnesses.

**3. Same—**

Where relator having the burden of establishing alleged nonresidence of electors in the face of his admissions that they were properly registered and that their absentee ballots were in proper form, calls the electors as witnesses, their testimony disclosing that they were residents of the county at the time of registering and voting is binding on relator, and there being no evidence *contra*, the evidence fails to support the findings of the referee or the trial court that they were disqualified on the ground of nonresidence.

**4. Elections § 2f—**

The fact that an elector's intention to return to the county of his domicile is indefinite does not deprive him of residence in the county for the purpose of voting, it being necessary in order to lose the old residence that he intend to make his new place of abode his permanent domicile so that a new residence is there established. G. S., 163-25 (f).

**5. Same—**

The word "residence" as used in G. S., 163-25 (f), means domicile as distinguished from a temporary dwelling-place.

**6. Elections § 11b—**

The certificate of the notary establishes *prima facie* that the electors had been sworn as required by statute when they signed the affidavits accompanying their absentee ballots. G. S., 10-4.

**7. Quo Warranto § 2—**

Doubtful statements of electors on the question of whether they had been sworn by the attesting officer when they signed the statutory affidavits accompanying their absentee ballots is insufficient to overcome the presumption of regularity arising from the certificate of the notary, the stipulation of the parties that their absentee ballots were in proper form, and the testimony of the attesting officer called as a witness by relator, and therefore the evidence is insufficient to justify a finding that relator had established their disqualification.

**8. Quo Warranto § 2—**

Upon challenge of absentee ballots, the question is the right of the challenged electors to vote and not the conduct of election officials, and if permissible, misconduct on their part will excuse rather than condemn any irregularity on the part of the electors.

Petition by relator, Delmar C. Owens, to rehear this case, reported in 228 N. C., 705.

The Justices to whom the petition was referred, filed the following memorandum in passing upon the petition:

*John A. Wilkinson and H. S. Ward for petitioner.*

Stacy, C. J., and Seawell, J., considering the petition to rehear.

The appeal was originally argued here on the assumption that all differences in the evidence, actual or inferential, were exclusively for the referee and the trial court. The petition to rehear seeks to perpetuate this assumption. They both overlook the basic error in the proceeding.

In the first place, the relator "concedes that each of the voters," whose vote is here attacked, "was duly registered in Tyrrell County and in the precinct in which he voted in the 1946 election." (R. 270.) And further, "that each of the affidavits of said voters was on a regular printed form, in the language of the statute and approved on the ballot envelope as required by law; that each affidavit bore the signature of the voter, the signature of the attesting officer, the seal of said attesting officer, the date executed and the County and State where executed in the places indicated on said affidavit form." (R. 139.)

We start, then, with an admission on the part of the relator that each challenged elector was "duly registered in Tyrrell County" and that his absentee ballot was in proper form. This concession of regularity gives rise to a presumption of correctness. *Omnia praesumuntur rite esse acta.* The burden, therefore, was not upon the electors to establish their right to vote, but upon the relator to show the contrary. Perhaps the case might have been allowed to rest just here on respondent's motion to dismiss as in case of nonsuit. However, the opinion of the Court deals with all the exceptions.

Secondly, the relator called the electors as witnesses to prove their own disqualifications. On the crucial questions, *i.e.,* residence at the time of voting, and being sworn, they testified against the relator, and he is bound by their testimony. *S. v. Todd,* 222 N. C., 346, 23 S. E. (2d), 47; *Sawrey v. Murrell,* 3 N. C., 397. They were quite specific as to their residence and in most cases of being sworn when they voted, especially on cross-examination, and there is nothing on the record to overbalance their testimony or to show otherwise. *S. v. Cohoon,* 206 N. C., 388, 174 S. E., 91. In several instances they were corroborated, and in others supported, by the attesting officer as to their being sworn. The relator was still struggling with the laboring oar at the close of his evidence. The respondent offered none.

The following examples will suffice as typical of those mentioned in the petition to rehear:

1. Mrs. J. M. Bateman, one of the challenged electors, testified as follows: "We left this county and went to Washington (County) and rented a house there about five years ago. Q. Did you register in Plymouth? A. Yes, sir, I did, about two or three years ago."

The relator contends that this is some evidence to support the finding of nonresidence and disqualification by the referee, which was approved by the trial court.

Note, however, what she says in explanation: "Every time I went up town they were after me to register, and I registered to get clear of them. I never voted in Washington County. My husband was in the Army at that time. (He enlisted from Tyrrell County.) I consider this my home. The only reason I was there was because of the shortage of houses in Tyrrell County; he couldn't find a house here and I went over there."

This undisputed testimony of the witness who says that she considered Tyrrell County her home, is binding on the relator. She was his witness. He vouched for her veracity and worthiness of belief. *S. v. Freeman,* 213 N. C., 378, 196 S. E., 308; *S. v. Taylor,* 88 N. C., 694.

Furthermore, the statutory definition of residence, G. S., 163-25, subsec. "f," is not as stringent against the absentee elector as the relator seems to think. This section provides that "If a person remove to another state or county within this state, with the intention of remaining there an indefinite time *and making such state or county his place of residence* (italics added), he shall be considered to have lost his place of residence in this state or county *from which he has removed* (italics added), notwithstanding he may entertain an intention to return at some future time." To square this with the Constitution, it is necessary that the word "residence," as here used, should be construed in the sense of domicile, denoting a permanent abode, as distinguished from a temporary dwelling-place. *Hannon v. Grizzard,* 89 N. C., 115. Indeed, such appears to accord with the legislative intent. *Jenkins v. Board of Elections,* 180 N. C., 169, 104 S. E., 346, 14 A. L. R., 1247. Where one's domicile is, there will his voting residence be also. *S. v. Williams,* 224 N. C., 183, 29 S. E. (2d), 744.

2. J. F. White, another of the challenged electors, testified as follows: "Q. You had not made up your mind definitely about coming back? A. I had in one way and in another I hadn't. I had thought about coming back. I had thought about not coming back also; depends on whether I could get work. I was considering the possibility of coming back, but had not definitely made up my mind."

On this evidence the referee found that the elector was a nonresident and the trial court affirmed.

Nevertheless, the foregoing was only a part of his testimony, as witness the following: "In November, 1946 (at time of voting), it was my intention to return to Tyrrell County. . . . I have always considered it

my home here in Tyrrell. . . . I voluntarily enlisted in the armed forces. . . . I gave Tyrrell County as the county in which I lived. . . . I came home in Tyrrell County to my father and mother upon being discharged. I later registered and voted in the same precinct. . . . I have always considered and counted myself a citizen of Tyrrell County. . . . I wouldn't think there would be any objection to my voting in the county in which I lived after having served my country for four years."

As this evidence is undisputed and binding on the relator, it unquestionably establishes the elector's right to vote in Tyrrell County. Certainly it does not prove the opposite. Moreover, the indefiniteness of the elector's intention to return to Tyrrell County is insufficient to establish loss of voting residence—no other having been acquired or intended, and the relator has rightly been held to have defaulted in the necessary proof. *Gower v. Carter,* 195 N. C., 697, 143 S. E., 513.

3. J. O. Everton, the third-challenged elector mentioned in the petition to rehear, testified that he hoped to return to Tyrrell County within the next four or five years. "Q. Can you state to the Commissioner any definite condition on which you intend to go back? A. Yes, sir. If I am laid off, which is barely possible at some future day, I would go back to Tyrrell County."

The relator contends that this suffices to support the referee's finding of loss of voting residence, which was affirmed by the trial court.

Yet observe what the witness further says: "In connection with my engineering work in the War Department, I am sent about the country. I do not know from one day to the next where I am going to be, not over 30 days at a time. . . . I have not registered to vote in any county other than Tyrrell. . . . I have paid my taxes down there, and I own property down there, and eventually I intend to return. I intended to return when I voted my absentee ballot. I considered it as my residence and still do."

Thus, the relator is again face to face with the uncontradicted testimony of his own witness which shows no loss of voting residence in Tyrrell County. He is therefore bound by it. *Lynch v. Veneer Co.,* 169 N. C., 169, 85 S. E., 289. The evidence falls short of the required proof.

Similar situations appear in respect of the other electors mentioned in the petition to rehear. It would only be repetitive to set them out *seriatim.* The fundamental error in the proceeding is, that the challenged electors were required to establish their right to vote in Tyrrell County, whereas the burden was on the relator to show that this right had been lost. Apparently, the presumptions arising from the certificate of election and the concession of regularity were overlooked. *Jones v. Flynt,* 159 N. C., 87, 74 S. E., 817. One who has the burden of proof is required to begin by taking up and carrying the burden, and to win,

he must end with it carried. *Speas v. Bank,* 188 N. C., 524, 125 S. E., 398. This the relator has failed to do on the record as it is brought here.

4. The petition to rehear names seven electors whose ballots were held by the trial court to be invalid on the ground that none of them was sworn by the attesting officer when they signed the statutory affidavits accompanying the absentee ballots, and it is now asserted that there was evidence to support the finding in each instance.

Exceptions to these rulings were sustained here, because the several negative, or at most doubtful, statements of these electors were regarded as insufficient to overcome (1) the certificate of the notary which imports *prima facie* truth of pertinent recitals, G. S., 10-4; *Pipe and Foundry Co. v. Woltman,* 114 N. C., 178, 19 S. E., 109; 39 Am. Jur., 230; (2) the stipulation of the parties, and (3) the evidence of the attesting officer which the relator presented as credible. 1 Am. Jur., 945. Consequently, it was thought that the relator had again faltered in his effort to shoulder the burden of proof.

The vital matter at issue is the right of the challenged electors to vote, and not the conduct of the Chairman of the County Board of Elections. Whatever strictures this conduct may deserve as a matter of propriety or ethics, it is not provided in the statute that such conduct shall disfranchise the otherwise duly qualified electors who voted absentee ballots. Indeed, official misconduct which misleads an elector would tend to excuse if permissible, rather than to condemn, any irregularity on his part. *Davis v. Board of Education,* 186 N. C., 227, 119 S. E., 372; *DeBerry v. Nicholson,* 102 N. C., 465, 9 S. E., 545; 11 Am. St. Rep., 767.

The conclusion is reached that upon due consideration of the petition no inadvertence or error has been made to appear. Needless to add, nothing herein has any binding effect upon the Court. It is simply a statement of the reasons inducing our action on the petition to rehear.

Petition denied.