Estate of J. B. Williams, Deceased, Tommy J. Williams and Charles J. Williams, Administrators, and Rosa Williams v. Commissioner.
Estate of Williams v. Commissioner
Docket No. 27414.
United States Tax Court
T.C. Memo 1955-321; 1955 Tax Ct. Memo LEXIS 16; 14 T.C.M. (CCH) 1254; T.C.M. (RIA) 55321; December 8, 1955
*16 1. Certain consents or waivers of the statute of limitations filed on behalf of J. B. and Rosa Williams held to be valid. [1939 Code Sec. 275(c) - changed in 1954 Code Sec. 6501(e)] 2. The five-year statute of limitations provided in Section 275(c), IRC of 1939, held applicable to the taxable year 1943. Bruce Gebhardt, Esq., 1117 Liberty Life Building, Charlotte, N.C., for the petitioners. Thomas N. Chambers, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Sur Mandate VAN FOSSAN, Judge: This proceeding came on for further hearing pursuant to mandate of the Court of Appeals for the Fourth Circuit for the sole purpose of allowing the parties to introduce evidence relating to waivers in extension of the statute of limitations for the taxable years 1943, 1944 and 1945, or the validity of such waivers. See Commissioner v. Estate of J. B. Williams, et al., 216 Fed. (2d) 598, reversing and remanding the Memorandum Opinion of this Court entered July 15, 1953 [12 TCM 829]. Timely consent agreements (U.S. Treasury Department Forms 872), extending the statute of limitations for the years 1943, 1944 and 1945 to June 30, 1950, have been executed by or on behalf of the decedent, J. B. Williams. The initial waiver extending the statute of limitations for the year 1943 to June 30, 1948, was signed by Williams personally. The other waivers were signed for him by Thompson M. Wells, pursuant to a *18 power of attorney filed with the Internal Revenue Service (hereinafter referred to as IRS). Consent agreements purporting to extend the statute of limitations for the year 1943 from January 20, 1948, to June 30, 1950, were executed on behalf of Rosa Williams by Wells pursuant to a power of attorney purportedly signed by Rosa. Timely consent agreements purporting to extend the statute of limitations for the years 1944 and 1945 to June 30, 1950, were likewise executed and filed on behalf of Rosa by Wells, pursuant to the same power of attorney. Wells is a certified public accountant who appeared at the original hearing of this case as a witness for petitioners. He has possessed a "Treasury card" since 1945. Following the initiation by respondent of an investigation of the tax liability of Williams and Rosa, Wells was retained in the case. Thereafter, Wells went to the Williams Candy Kitchen a number of times in the course of his work on the case. He often saw Rosa there but never discussed the case with her, except on one occasion when he unsuccessfully attempted to question her with respect to a savings account. Otherwise, all of his dealings were with Williams. The execution of *19 waivers extending the statute of limitations was discussed by him with Williams. Upon being retained, Wells filed with the IRS a notarized power of attorney dated December 10, 1946, running to him from Williams and Rosa. Such a power of attorney was necessary in order for Wells to negotiate with the field agents. Wells conferred with the IRS with respect to the case on at least two occasions. In addition to the aforementioned consent agreements, Wells prepared and filed with the IRS, on May 24, 1949, a protest signed by him as agent. The protest so filed contained verifications signed by Williams and Rosa and sworn to by them before a notary public who was an office employee of Wells. On January 2, 1948, the following letter was sent by the IRS to Williams and Rosa: "This office and the office of the Chief Counsel for the Bureau of Internal Revenue have under joint consideration your income tax returns for the taxable years ended December 31, 1942 to 1945, inclusive, together with reports submitted thereon by the Bureau's investigating agents. "It is desired to bring to your attention the fact that the statutory period within which a statutory notice of deficiency may be issued *20 to you will expire on March 15, 1948, for the year 1944, and on June 30, 1948, as to the year 1943. "Under the provisions of existing law the Commissioner of Internal Revenue and the taxpayer may consent to the assessment of the tax deficiency at a later date. Consent forms extending the assessment period to June 30, 1949, for the years 1943 and 1944 are enclosed and if you elect to execute them please forward the forms properly signed and dated, in triplicate, to the Commissioner of Internal Revenue, Washington 25, D.C.; otherwise it will be necessary to issue a statutory notice of deficiency as provided by law in order to fully protect the Government's interests. "You should carefully read the printed instructions at the bottom of the forms since failure to execute the forms in accordance with such instructions may necessitate their rejection by the Commissioner. "Please reply within ten days from the date of this letter making reference to IT:R:E:Aj-HOK-35034." On January 5, 1948, Wells replied to the foregoing letter and forwarded consent agreements which were rejected because the power of attorney on file with the IRS did not specifically authorize him to extend the statute *21 of limitations. It was suggested in the letter of rejection that new consents be executed by the taxpayers individually or by Wells as attorney in fact and if the latter course were chosen, a new power of attorney would be needed. In replying, Wells supplied new corrected powers of attorney purporting to be executed by both Williams and Rosa, and executed consent forms. Such powers of attorney were dated December 10, 1946, to correspond with the original power of attorney being superseded, and were notarized by an employee of Wells as having been subscribed and sworn to before her. The consent forms were rejected since Wells had executed them for Williams only and had not included Rosa's name thereon. Thereafter, by letter of January 21, 1948, Wells forwarded consent agreements covering the years 1943 and 1944, which consents were accepted. Wells never discussed the power of attorney with Rosa nor attempted to cause her to sign one. He never informed her that one had been filed in her behalf. At the time Wells submitted the consent agreements, the powers of attorney and the protest, he had no reason to believe he did not have authority to represent Rosa. In 1950 Williams and Rosa *22 filed with the IRS a revocation of powers of attorney previously executed in favor of Thompson M. Wells. In accordance with the mandate of the Court of Appeals, respondent has introduced in evidence at the hearing sur mandate the aforementioned waivers, or consents, each of which appears to be regular on its face. This being true, petitioners must affirmatively show the invalidity thereof. Concrete Engineering Co., 19 B.T.A. 212. Petitioners raise no question as to the validity of the waivers executed and filed by or on behalf of Williams. Thus, as to him, the statute of limitations has not run on the years involved and such years are open for assessment and collection of taxes found to be due. With respect to Rosa, however, petitioners take the position that Wells was acting without proper authority at the time he prepared and filed a waiver in her behalf. In this connection, Rosa denies ever having signed the power of attorney on the basis of which Wells purported to act. She would, therefore, disavow the signature appearing thereon and purporting to be hers as a forgery and maintain that any action taken pursuant thereto was without authority and is invalid. *23 Just who would be interested in forging her signature does not appear. In substantiation of such contention, petitioners have offered the testimony of an expert on handwriting to the effect that, in his opinion, the signature in question was written by a different person than was the one in evidence admittedly written by Rosa. But, the value of such testimony is seriously lessened, if not completely depleted, by further testimony of the same witness with respect to Rosa's signatures on other documents, which testimony, at one point at least, is in direct conflict with that of Rosa, whose testimony was within itself exceedingly vague and self-contradictory. In fact, Rosa even went so far as to state that she was unable to recognize her own signature. Furthermore, it is to be noted that the document in dispute contains the certification of a notary public that it was subscribed and sworn to before her. Such certificate imports prima facie truth of its own pertinent recitals. McNeal Pipe & Foundry Co. v. Woltman, 114 N.C. 178, 19 S.E. 109; Owens v. Chaplin, 229 N.C. 797, 48 S.E. 2d 37; G.S. § 10-4. Moreover, to our inexpert eye, all of her signatures in evidence, *24 those admittedly written by Rosa, as well as those she would deny, in our opinion were written by the same hand. Finally, we are constrained to point out in passing that although she repeatedly denies the signing of the various tax returns here in controversy, nevertheless, Rosa does not seek to disavow them, apparently, for the reason that to do so under the circumstances would be to prevent the running of the statute of limitations. The state of the proof being, in our opinion, completely unsatisfactory and insufficient to discharge petitioner's burden of showing the waivers in dispute to be invalid, see Concrete Engineering Co., supra, we have no alternative to sustaining respondent's position and holding that such waivers are valid to extend the statute of limitations as to Rosa for the years 1944 and 1945. With respect to the year 1943, respondent recognizes that he must rely upon the five-year statute of limitations provided in Section 275(c) of the Internal Revenue Code of 1939, [1] inasmuch as the waiver for such year was executed more than three years but less than five years following the date of filing of the pertinent return. *25 By means of the so-called increase in net worth method, respondent has determined the taxable net income of Williams and Rosa for 1943 to have been in the amount of $12,156.29 as contrasted with a taxable net income of $2,739.59 reported by them. Net income is defined in Section 21 of the Internal Revenue Code of 1939 as meaning "* * * gross income computed under section 22, less the deductions allowed by section 23." Thus, an understatement of income in a return may result either from an overstatement of deductions or from an omission of gross income or both. That the understatement of net income determined by the respondent in the instant case resulted, for the most part, from an omission of gross income, which omission was in excess of 25 percent of the amount reported, is patent. Compare H. Leslie Leas, 23 T.C. 1058, and Melvin E. Tunningley, 22 T.C. 1108, with H. A. Hurley, 22 T.C. 1256. We, therefore, hereby so find as a fact and sustain respondent as to this item. Petitioners contend that our rulings hereinabove, with respect to the statutes of limitations, make mandatory at this point a complete determination of the cash position *26 of Williams and Rosa at the end of the years 1941 through 1945. But, the only years before us on this remand are the years 1943, 1944 and 1945. Moreover, our ruling with respect to the year 1946, in which ruling we specifically considered petitioners' cash position and rejected as not substantiated their contention of additional cash on hand, is, by necessary implication, generally applicable to the years now before us on remand and, we feel, dispositive of the question now posed by petitioners. Decision will be entered under Rule 50. Footnotes
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.↩